BURKE et al., Appellants and Cross–Appellees,

v.

ATHENS et al., Appellees and Cross–Appellants.

[Cite as *Burke v. Athens* (1997), 123 Ohio App.3d 98.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 2620–M.

Decided Sept. 24, 1997.

*Mary Clare O'Connor,* for appellants and cross-appellees.

*Randy D. Rinicella* and *Thomas P. Mannion,* for appellees and cross-appellants.

REECE, Judge.

Appellants, John Burke and Burke Properties, Inc. ("Burke"), appeal the decision of the Medina County Court of Common Pleas denying their motions in the alternative for judgment notwithstanding the verdict, for a new trial, or for remittitur. Cross-appellants, Alexander Athens, Sandra Athens, and Medina Car and Van Wash, Inc. ("the Athenses"), appeal the decision of the trial court granting a directed verdict in favor of Burke. We affirm in part and reverse in part.

I

Since 1983, the Athenses had owned a business in Medina known as Medina Car and Van Wash, Inc. The business consisted of a car wash, a beverage carryout, and a point of sale for Ohio Lottery tickets. In the fall of 1989, the Athenses entered into negotiations to sell the business to Burke. The sale was executed on January 17, 1990, by three separate written agreements and a secured discount note given to the Athenses by Burke. The first payment on the note was to be made in 1998.

One of the written agreements was a management agreement between the parties. Because Burke did not yet have a liquor license or a license to sell lottery tickets when the sale was consummated, Burke agreed to sell liquor and lottery tickets at the business as the Athenses' employee, under their licenses. This arrangement was to continue until the licenses were either transferred into Burke's name or Burke obtained his own licenses. In addition, the arrangement would allow Burke to take the Athenses' place on a waiting list for obtaining a lucrative Super Lotto license from the Ohio Lottery Commission.

Thereafter, the parties encountered various problems. Burke claimed that the Athenses had misrepresented the value of the business before the sale took place. There were also two disputes over the sale of lottery tickets, only one of which is relevant to this appeal. The dispute began when the lottery commission demanded from the Athenses at least $1,200 in lottery ticket sales that had not been put into an account used to hold sales proceeds. In turn, the Athenses demanded that Burke pay them the money, which he refused to do. After all the parties met with an official from the lottery commission, it was determined that Burke owed the money. However, Burke still refused to pay the money to the Athenses, who were forced to pay the money themselves. As a result, the Athenses' lottery license was canceled, and the business lost its place on the Super Lotto waiting list.

Burke filed suit against the Athenses for fraud in the sale of the business. The Athenses counterclaimed for breach of contract and later added a supplemental

counterclaim for anticipatory repudiation of the secured discount note. The case was tried to a jury in July 1996. During the trial, each side produced testimony as to the amount that Burke owed the Athenses from the lottery ticket sales, with the figures ranging between $1,200 and $1,284. At the close of all the evidence, Burke moved for a directed verdict on the Athenses' anticipatory-repudiation counterclaim, which the trial court granted. The jury returned a verdict against Burke on his claim, and found for the Athenses on their breach-of-contract counterclaim. The jury assessed damages at $70,000. This appeal and cross-appeal followed.

## II

Burke asserts one assignment of error:

"Where there was no evidence to support a jury verdict of $70,000.00 on a breach of contract claim involving a dispute over approximately $1,284.00, the trial court committed reversible error in denying appellants' motion for judgment notwithstanding the verdict, for remittitur or for new trial, and in entering judgment on the verdict."

Burke argues that a judgment for more than $1,284, the highest amount attributed to the lottery ticket sales, is not sustained by the weight of the evidence presented at trial. He makes but one assignment of error—that the $70,000 judgment is too high—with three alternative theories. We find Burke's remittitur argument well taken.[1]

Remittitur is a device whereby a trial court may reduce an excessive jury award. If a trial court finds a verdict to be excessive and the product of passion or prejudice on the part of the jury, a new trial must be granted; no remittitur is possible. *Larrissey v. Norwalk Truck Lines, Inc.* (1951), 155 Ohio St. 207, 44 O.O. 238, 98 N.E.2d 419, paragraph four of the syllabus. However, "if a verdict in an action for unliquidated damages is excessive, but not appearing to have been influenced by passion or prejudice, the court may, with the assent of plaintiff, reduce the verdict by remittitur *to any amount warranted by the evidence.*" (Emphasis added.) *Id.* at 219, 44 O.O. at 243, 98 N.E.2d at 426. See, also, *Leila Hosp. & Health Ctr. v. Xonics Med. Sys., Inc.* (C.A.6, 1991), 948 F.2d 271, 278 (remittitur appropriate if jury award is "beyond the range supportable by proof"); 30 Ohio Jurisprudence 3d (1981) 227, Damages, Section 207 (appeals court may reverse judgments that include "an element of damages as to the amount of which no evidence was given"). "This court has the same unlimited

---

1. Because we sustain Burke's assignment of error on the remittitur grounds, and all of Burke's arguments seek the same outcome, we decline to address the other arguments presented. See App.R. 12(A)(1)(c).

power and control of verdicts and judgments as the trial court." *Lansdowne v. Beacon Journal Publishing Co.* (Feb. 15, 1989), Summit App. No. 13751, unreported, at 5, 1989 WL 11798. If the prevailing party refuses to accept the remittitur, there should be a new trial. *Lance v. Leohr* (1983), 9 Ohio App.3d 297, 298, 9 OBR 544, 544–545, 459 N.E.2d 1315, 1316.

■ Burke argues that the evidence produced at trial is insufficient to sustain a verdict of $70,000 on the breach-of-contract counterclaim. The Athenses argue that the transcript is "replete with evidence" justifying the higher award. However, after a careful review of the evidence presented at trial, we find that remittitur is appropriate. The only actual monetary figure given to the trier of fact was the disputed lottery ticket sales totaling $1,284. The Athenses' "evidence" amounts to several oblique references to telephone calls and meetings.[2] No reference is made to charges for the phone calls, distances traveled for the meetings, how much of the Athenses' time was consumed by these meetings and phone calls, or how much the lost time was worth. In short, putting a figure on damages above and beyond the $1,284 from lottery ticket sales is speculative at best. Because there is no competent, credible evidence of damages for more than $1,284, the jury's award should be remitted to that amount.

### III

The Athenses assert one assignment of error:

■ "Construing the evidence of anticipatory repudiation most strongly in favor of the Athenses, more than sufficient evidence existed upon which reason-

---

2. Exemplary of these references is a portion of the trial testimony of Mr. Athens:

"Q [by Mr. Athens's attorney]. Did you or Sandy contact anyone from the Ohio State Lottery Commission to determine who was selling these tickets and who owed the money?

"A. I believe—I'm not sure if it was me or Sandy called [*sic*] Fred Gissman [of the lottery commission].

"Q. Okay. Did you eventually have a meeting with Mr. Gissman and Mr. Burke?

"A. Yes, we did.

"\* \* \*

"Q. \* \* \* Do you recognize that?

"A. Yes, I do.

"Q. And is that a letter to John Burke from you and Sandy?

"A. Yes, it is.

"Q. What's the date of that letter?

"A. September 21st, 1992 [*sic*].

"Q. And what's the substance of that letter?

"A. We are—

"Q. Without reading the whole thing, just generally speaking.

"A. We are—in this letter, we're telling John that we want to get paid for the lottery tickets he sold, or we will take it to litigation."

We cannot conceive that a jury could rationally translate this kind of evidence into a dollar amount for time and money spent in seeking repayment from Burke.

able minds might reach different conclusions, and therefore the trial court committed reversible error in granting a directed verdict on the anticipatory repudiation claim."

The Athenses argue that the sum of Burke's actions amounts to an anticipatory repudiation of the note made by Burke in consummating the sale of the business. Because there was evidence that Burke mismanaged the business, refused to pay the Athenses the lottery ticket money, filed suit against them, and refused to give further assurances of performance, the Athenses assert that a directed verdict for Burke was inappropriate. We disagree.

A trial court may direct a verdict under Civ.R. 50(A) if "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party."

This court must "construe the evidence adduced at trial and all reasonable inferences therefrom" in the nonmovant's favor. *Fischer v. Dairy Mart Convenience Stores, Inc.* (1991), 77 Ohio App.3d 543, 550, 602 N.E.2d 1204, 1208–1209. However, legal questions are reviewed *de novo*. *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 602, 611 N.E.2d 955, 962–963.

A "repudiation" is defined as:

"(a) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach * * *, or

"(b) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." 2 Restatement of the Law 2d, Contracts (1981), Section 250.

If one party has reasonable grounds to believe that the other will not perform, that party may demand adequate assurance of performance from the other. Failure to provide such assurances is treated as a repudiation of the contract. *Id.*, Section 251.

The Athenses argue that sufficient evidence was presented to the jury to prevent the trial court from directing a verdict for Burke. However, this court has held that the doctrine of anticipatory repudiation does not apply to executory "contracts for the payment of money only." *Crouse v. Nantucket Village Dev. Co.* (1983), 10 Ohio App.3d 191, 193, 10 OBR 263, 265, 460 N.E.2d 1389, 1391. By definition, a note, like all negotiable instruments, is solely a promise "to pay a fixed amount of money." R.C. 1303.03(A). In the case at bar, the Athenses'

repudiation claim relates solely to the note made by Burke, on which Burke's performance (payment) is not due until 1998. A jury cannot consider a claim that is no claim at all. As a matter of law, the Athenses cannot have an anticipatory repudiation claim on a note not yet due. Thus, the trial court correctly directed a verdict on this claim.

## IV

The Athenses' assignment of error is overruled. The judgment of the Medina County Court of Common Pleas granting the motion for a directed verdict is affirmed. Burke's assignment of error is sustained. The judgment of the Medina County Court of Common Pleas denying the motion for remittitur is reversed. The judgment for the Athenses is remitted to $1,284, contingent upon their acceptance thereof. Should the Athenses decline to accept the remittitur, a new trial should be held, limited to the issue of damages on the breach-of-contract counterclaim.

*Judgment accordingly.*

QUILLIN, P.J., and BAIRD, J., concur.