OPINION
{¶ 1} After a trial by jury, appellants, William Bridge, III, and Lisa Bridge ("Bridges") were found liable to appellee, Carpet One Mentor, Inc. for breach of contract. Appellants now appeal from various judgments entered against them in the *Page 2 
course of the proceedings by the Lake County Court of Common Pleas. For the reasons set forth herein, we affirm.
 {¶ 2} Statement of Facts and Procedural History
 {¶ 3} In November of 1999, appellants, William and Lisa Bridge, commenced construction of a new home. In June of 2000, one of their builders, Terry Redlin, recommended the Bridges contact appellee Carpet One for their hard surface flooring and carpet needs. At trial, Mrs. Bridge testified she contacted Carpet One in June of 2000, and made an appointment with appellee, Laura Rosborough, a Carpet One sales representative, to discuss possible selections. After comparing various samples, Mrs. Bridge made her final selections, and, on June 29, 2000, Mrs. Bridge placed her order for vinyl flooring, hardwood flooring, and tile (hard surfaces) as well as certain carpet selections. On July 5, 2000, Mrs. Bridge signed the purchase invoice and placed a $ 7,000 deposit on the hard surface material and installation.[1]
 {¶ 4} Pursuant to the July 5, 2000 agreement, the Bridges were obligated to pay the remaining balance owed on the hard surfaces when installation was completed. The purchase invoice further provided that the Bridges would pay half of the cost of the materials and installation of the carpet before installation and pay the remaining balance when installation was completed.
 {¶ 5} After completing the hard surface installation, Carpet One sought payment on the balance. However, according to an October 2, 2000 letter authored by Mr. *Page 3 
Bridge, the Bridges' money was tied up in escrow and would be released after the home was inspected.[2] Notwithstanding the structured payment plan set forth in the July 5, 2000 agreement, Mr. Bridge wrote:
 {¶ 6} "The funds in escrow presently exceed $ 40,000. If you would simply agree to be paid from escrow, I will provide you in advance, with a written, notarized Assignment of Escrow Form, authorizing and instructing the escrow agent to make direct and/or joint payment to Carpet One in the amount of our agreement and balance due. In addition, I would obtain a letter from the escrow agent stating upon inspection of the work performed, the escrow agent would release funds with the Carpet One as a named payee. Please reconsider and advise." (Sic.)
 {¶ 7} Mr. Bridge also noted some "minor problems" with which he was concerned regarding the hard surface installation. In particular, he stated:
 {¶ 8} "Also, * * * we have a couple of minor issues with the hard floors. The tile around two vents is not cut sufficiently to accept the floor vent covers. We are afraid to force it as we might crack the tile. The tile around the fireplace and mantle in the office remains unfinished. We have some cracked and/or missing grout on the countertop. This work needs to be completed and is interfering with other work. I would appreciate your prompt attention on this."
 {¶ 9} Although the record does not include a written response from Carpet One or Rosborough, Carpet One moved forward with, inter alia, the Bridges' carpet installation. After completing all installations, the Bridges owed Carpet One a total of $ 20,556.79. *Page 4 
 {¶ 10} Further, pursuant to Mr. Bridge's request, John Hagey, Carpet One's subcontracted installer, arrived to finish the fireplace tile and investigate the concerns voiced by Mr. Bridge. Mr. Hagey testified he found no problems with the flooring but re-grouted the countertops and cut the bathroom tile to fit the vents.
 {¶ 11} On October 2, 2000, Ms. Rosborough was sent a fax from the Bridges' escrow agent advising her that, "upon completion and final inspection approval, available escrow funds, held by Community First Bank, in the amount of $ 20,556.79, will be disbursed through the Guarantee Title and Trust Company * * * to Lisa Bridge and Carpet One as joint payees."
 {¶ 12} On November 13, 2000, Mr. Bridge sent a letter to Carpet One and Laura Rosborough to alert them that the bank had completed its inspection of the home and therefore the funds would be dispensed within a "few weeks." Several months passed without the funds being released. During the interim, acrimony between the parties increased. Various phone calls and letters were exchanged all concerning the failure of payment. Finally, on February 21, 2001, Carpet One, through its manager Bill Bissett, wrote the Bridges alerting them their account was over ninety days delinquent and, without immediate payment, Carpet One would turn the account over to its collections department. Although evidence indicated Carpet One submitted the Bridges' account to collections on February 26, 2001, it is unclear what, if anything, occurred as a result.
 {¶ 13} On March 21, Mr. Bridge wrote Carpet One castigating Bill Bissett for his "repeated telephone calls" regarding the outstanding debt. He advised Mr. Bissett that the escrow funds had not been released for reasons beyond his control and concluded *Page 5 
that "[Bissett's] actions are adding up to a situation, which will soon turn adversarial, which I do not believe will benefit anyone." [Sic]
 {¶ 14} The record does not disclose the nature of the parties' interaction, if any, over the next two months. However, on May 30, 2001, Mr. Bridge faxed Carpet One's attorney stating that he was completing the septic system backfill, which, according to the fax, was the only item remaining before final inspection was accomplished and the funds released. Mr. Bridge concluded his letter by asking counsel if he would "have a representative from Carpet One call [him] to schedule an inspection of the few items of defective workmanship, so there is no further delay." [Sic]
 {¶ 15} Nearly three months passed before all necessary inspections and approvals were received. Pursuant to the approvals, Mr. Bridge faxed a letter to Carpet One's counsel alerting Carpet One that he expected "release of the funds soon." He apologized for the delay stating he had been "out of town until recently and couldn't devote the time." He concluded his letter by soliciting Carpet One's cooperation regarding the "remedial work" to which he had previously alluded in his October 2, 2000 letter.
 {¶ 16} On August 31, 2001, Mr. Bridge again faxed Carpet One's counsel notifying him that the funds were finally released via a joint check payable to Carpet One and Lisa Bridge. Instead of releasing the funds to Carpet One, the Bridges alleged they "mistakenly" deposited the check into their business account. However, the record indicates the Bridges actively refused to pay Carpet One until it made specific repairs.
 {¶ 17} In light of the demand, Carpet One made specific proposals with respect to remedial work on the flooring and tile. The record indicates that Carpet One's *Page 6 
manager, Mr. Bissett, had called "numerous times" to gain access to address Mr. Bridge's concerns. However, Mr. Bissett was either ignored or denied access. Finally, in a November 20, 2001 letter, Mr. Bridge stated he would only allow Carpet One access to address the repairs if it made a written guarantee that the repairs would not look like "patchwork."
 {¶ 18} On April 2, 2002, in lieu of entertaining Mr. Bridge's demands, Carpet One filed a complaint sounding in breach of contract with additional claims for unjust enrichment and equitable relief. On May 6, 2002, the Bridges filed an answer and a counterclaim alleging violations of the Ohio Consumer Sales Practices Act ("CSPA") for falsely representing the existence of a warranty. On September 20, 2004, the Bridges amended their counterclaim to include a claim under the Ohio Home Solicitation Sales Act ("HSSA"). The Bridges also joined third party defendants, Laura Rosborough and John Hagey. Additionally, the Bridges alleged that appellees, in general, were negligent in the installation of materials and thus their performance fell below workmanlike standards in violation of the Magnuson-Moss Warranty Act.
 {¶ 19} On May 19, 2005, after entertaining a host of summary judgment motions and reciprocal motions in opposition, the trial court granted Carpet One's, Hagey's, and Rosborough's motions for summary judgment pertaining to the Bridges' HSSA claim and Magnuson-Moss Warranty Act claim. The court further granted summary judgment in Hagey's favor regarding the Bridges' CSPA claim thereby dismissing him from the litigation.
 {¶ 20} On August 16, 2005, jury trial commenced on the remaining issues. At the close of trial, the Bridges moved for directed verdict on their CSPA claim which the trial *Page 7 
court denied. The jury returned a verdict in favor of all appellees and against the Bridges on their remaining counterclaims. On September 6, 2005, the trial court memorialized the verdict accordingly: "Judgment is granted in favor of Carpet One, Mentor, Inc., in the amount of $ 20,556.79 at 5% interest per annum as of August 22, 2005. Judgment is further granted on behalf of Carpet One, Mentor, Inc., and Laura Rosborough on Defendant's counterclaim and Third Party Complaint." On September 20, 2005, the Bridges filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for new trial. On December 6, 2005, the motion was denied.
 {¶ 21} The Bridges now appeal and assign three errors for our review:
 {¶ 22} "[1.] The trial court erred in denying appellant's [sic] summary judgment motion, directed verdict motion, and motion for judgment NOV or in the alternative for a new trial on the issue of express warranty.
 {¶ 23} "[2.] The trial court erred in denying appellant's [sic] summary judgment motion on the Home Solicitation Sales Act ('HSSA') and dismissing appellants [sic] HSSA claim, in contradiction of this court's decision in Kamposek v. Johnson, Case No. 2003-L-124 (11th Dist. App., Jan. 28, 2005). [Sic]
 {¶ 24} "[3.] The trial court erred in mistakenly omitting a crucial portion of the jury instruction on the Consumer Sales Practices Act, such that, as read, there was no way for the jury to find in favor of appellants which amounted to plain error."
 {¶ 25} Warranty Claim and Motion for Summary Judgment
 {¶ 26} The Bridges' first assignment of error asserts three separate arguments each of which we shall treat in turn. First, the Bridges contend the trial court erred in denying their motion for summary judgment on their claim for breach of warranty. *Page 8 
 {¶ 27} Summary judgment is appropriate under Civ.R. 56(C) when (1) there is no genuine issue of material fact remaining to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence in favor of the nonmoving party, that conclusion favors the moving party. Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, 327.
 {¶ 28} The moving party bears the initial burden of providing the trial court a basis for the motion and is required to identify portions of the record demonstrating the absence of genuine issues of material fact pertaining to the non-moving party's claim. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. The burden then shifts to the non-moving party to set forth specific facts that would establish a genuine issue for trial. Id. However, the non-moving party may not rest on bald allegations or denials contained in the pleadings; rather, he or she must submit evidentiary material sufficient to create a genuine dispute over material facts at issue. Id.
 {¶ 29} We review a trial court's decision to grant summary judgment de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. As such, summary judgment proceedings afford an appellate court the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36.
 {¶ 30} In their motion for summary judgment, the Bridges argued Carpet One and Rosborough violated the CSPA when they allegedly disclaimed the express warranty in the purchase invoice. In support, the Bridges cited R.C. 1345.02(C), which requires a court to "give due consideration and great weight to federal trade commission orders, *Page 9 
trade regulation rules and guides, and federal courts' interpretation of subsection 45(a)(1) of the Federal Trade Commission Act * * *." Building upon this, the Bridges asserted that the Magnuson-Moss Warranty Act (15 USC Section 2301, et seq.) is subsumed under the Federal Trade Commission Act and thus, in their estimation, a violation of Magnuson-Moss represents a violation of the CSPA. In this respect, the Bridges duly noted that Section 2308(a) of the Magnuson-Moss Warranty Act makes any attempt to disclaim an implied warranty of merchantability "an unfair and deceptive act" where the supplier "makes any written warranty or enters into a service contract." From this, the Bridges concluded Carpet One, through Rosborough, violated the Magnuson-Moss Warranty Act and, by implication, the CSPA by asserting it had no obligations under its warranty.
 {¶ 31} The warranty at issue is set forth on Carpet One's sales invoice and provides, in relevant part:
 {¶ 32} "All material is guaranteed as specified. All work to be completed in a workmanlike manner according to standard practices. * * *"[3]
 {¶ 33} We first point out that the purchase agreement at issue contains an express warranty guaranteeing the installation would be performed in a workmanlike manner. Section 2308 of the Magnuson-Moss Warranty Act addresses the nature and scope of implied warranties on consumer products. Furthermore, Section 2308(a), the section upon which the Bridges rely, addresses implied warranties of merchantability. *Page 10 
An implied warranty of merchantability typically relates to an implied guarantee given by a merchant that goods he or she sells will be generally fit for the purpose they are sold. See R.C. 1302.27(A) and (B)(3). The Bridges' motion for summary judgment and their appellate brief contend that the installation of their countertop tiles, bathroom tiles, fireplace tiles, and hardwood flooring was completed in an unworkmanlike manner but Carpet One, through Rosborough, disclaimed the express warranty. Because the instant matter addresses the alleged disclaimer of an express warranty for services, not an implied warranty of merchantability, the Bridges' use of Section 2308(a) of the Magnuson-Moss Warranty Act is inapposite. See, e.g., Curl v. Volkswagenof America, Inc. 11th Dist. No. 2004-T-0112, 2005-Ohio-6420, at ¶ 22; see, also, 15 U.S.C. Section 2308(a).
 {¶ 34} This problem notwithstanding, the Bridges allege Carpet One and Rosborough breached the express warranty set forth in their contracts for sale to the extent they maintained they owed the Bridges "no duties" under the warranty. We disagree.
 {¶ 35} After the work had been completed, the Bridges made several complaints about the quality and condition of the workmanship. Specifically, they complained the grout on the countertop tiles and fireplace tiles was uneven and cracking. The Bridges also stated several tiles on the countertop were coming loose and two bathroom tiles had cracked. With respect to the hardwood floor, the Bridges maintained Carpet One's installer chipped one board and cracked a separate board during installation. Finally, the Bridges complained nail holes were left exposed without filler.[4] However, the *Page 11 
Bridges allege when they contacted Carpet One through Rosborough regarding their concerns, Carpet One purportedly did nothing and, in fact, Rosborough disclaimed the warranty.
 {¶ 36} A review of the deposition testimony, affidavits, and other Civ.R. 56 materials reveals Carpet One's flooring installer, John Hagey, commenced installation of the ceramic tiles and hardwood floors during July of 2000 and completed the work in October of 2000. On October 2, 2000, the Bridges notified Carpet One, via letter, of several "minor issues" they had with the "hard floors." Further, in the same letter, Mr. Bridge alerted Carpet One that he had experienced some plumbing problems and was concerned about water damage on the hardwood floors. On October 12, 2000, Hagey returned to inspect the floors and address Mr. Bridge's concerns. During the visit, Hagey cut a bathroom tile to accommodate heating vents, repaired grout on the countertop, and inspected the hardwood floor as well as the bathroom tile. During his inspection, Hagey testified he noticed no specific problems with the floor or the bathroom tile.
 {¶ 37} During his deposition, appellant, William Bridge, testified that although he did not recall Hagey making the foregoing corrections, "he very well might have." Furthermore, in a letter dated November 20, 2001, Mr. Bridge acknowledged Carpet One had attempted to address his concerns and make any necessary repairs. However, the letter indicated Mr. Bridge disagreed with the manner in which Carpet One would go about the repairs. In short, Mr. Bridge stated, "I think the variable here is the Carpet One suggested method of repair/remediation as opposed to thecorrect method *Page 12 
of repair and the costs related to each method, in other words a difference in opinion." (Emphasis sic.)[5] The November 20, 2001 letter concludes with an additional acknowledgement that Carpet One's manager, Bill Bissett "has called numerous times to obtain access for the repairs[.]" However, the evidence demonstrates that Mr. Bridge did not allow Carpet One to move forward with repairs.
 {¶ 38} Throughout the proceedings, both prior to and during trial, Carpet One and Rosborough have disputed the Bridges' assessment of the quality of the workmanship relating to the installation of the grout, tile, and flooring. In fact, Hagey testified his work was "very good" and completed pursuant to industry standards. Irrespective of their position on this issue, the evidence demonstrates Carpet One, through Rosborough, made a good faith effort to address the concerns voiced by the Bridges pertaining to the grout, tile, and flooring. Therefore, viewing the evidence in a light most favorable to Carpet One and Rosborough, we believe the trial court did not err in denying the Bridges' motion for summary judgment on their claim for breach of warranty.
 {¶ 39} Warranty Claim and Motions for Directed Verdict and JNOV
 {¶ 40} We shall next address the trial court's denial of appellants' motions for directed verdict and judgment notwithstanding the verdict relating to the warranty issue.
 {¶ 41} "[A] trial court may not grant a directed verdict unless the evidence, when construed in the light most favorable to the nonmoving party, leads reasonable minds to only one conclusion, and that conclusion is adverse to the nonmovant. Civ.R. 50(A), *Page 13 
therefore, requires the trial court to give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. Broz v. Winland (1994), 68 Ohio St.3d 521, 526; Keeton v.Telemedia Co. of S. Ohio (1994), 98 Ohio App.3d 405, 408. If there is sufficient credible evidence to permit reasonable minds to reach different conclusions on an essential issue, then the trial court must submit that issue to the jury. O'Day v. Webb (1972), 29 Ohio St.2d 215, paragraph four of the syllabus; * * *." Darroch v. Smyth, Cramer Co. (Apr. 3, 1998), 11th Dist. No. 96-L-212, 1998 Ohio App. LEXIS 1450, at *7-*8. "A motion for directed verdict presents a question of law that an appellate court reviews de novo." Celmer v. Rodgers, 11th Dist. No. 2004-T-0074, 2005-Ohio-7054, at ¶ 27.
 {¶ 42} We also note a motion for judgment notwithstanding the verdict is reviewed under the same standard as that of a motion for a directed verdict. Texler v. D.O. Summers Cleaners Shirt Laundry Co. (1998),81 Ohio St.3d 677, 679; see, also, Blatnik v. Dennison,148 Ohio App.3d 494, 504, 2002-Ohio-1682.[6]
 {¶ 43} The Bridges argue they proved at trial that Carpet One, through Rosborough, "falsely represented that a warranty existed at the time [they] entered the consumer transaction in violation of [R.C.] 1345.02(B)(10)." In support, appellants cite Laura Rosborough's trial testimony that Carpet One does not warrant countertops. In the Bridges' estimation, Rosborough's testimony was a unilateral disclaimer of the express warranty set forth in the July 5, 2000 purchase invoices. *Page 14 
 {¶ 44} We first point out that the warranty language set forth on the purchase invoices envelopes "workmanship," i.e., a service. The warranty does not specifically provide any guarantee regarding the materials installed, i.e., goods. The warranty language on the invoice states, in its entirety:
 {¶ 45} "All material guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate."
 {¶ 46} According to the first sentence, Carpet One guarantees the customer will receive the materials they ordered. The second sentence warrants that the services provided by Carpet One, here, installation of the materials ordered by the Bridges, will be accomplished in a "workmanlike manner." Finally, the third sentence specifies the procedure a customer must follow if he or she wishes to alter the materials ordered. The first and the third sentences, when read together, demonstrate that the term "material" refers to the items specified in the order form, i.e., Carpet One guarantees the goods ordered will be those received. Nothing in the warranty language suggests Carpet One warrants the actual materials themselves. Thus, we do not read Ms. Rosborough's testimony as a disclaimer of the express warranty language appearing on the purchase invoice.
 {¶ 47} The Bridges also argue that Carpet One breached its warranty through an anticipatory repudiation of its alleged obligations under the contract. The Bridges direct this court's attention to Rosborough's deposition testimony wherein she asserted that, without first receiving payment, Carpet One ultimately refused to engage in any *Page 15 
additional repair work. The Bridges contend Rosborough's statement functioned to repudiate its obligations under the contract. We disagree.
 {¶ 48} First, Rosborough's deposition testimony was not admitted at trial and, therefore, could not be considered by the trial court in ruling upon the Bridges' motions for directed verdict and judgment notwithstanding the verdict. That said, however, Rosborough did testify at trial that Carpet One does not warrant products for which a customer does not pay. As Rosborough's testimony is substantively similar, we shall consider Rosborough's trial testimony in lieu of the deposition testimony to which the Bridges specifically refer.
 {¶ 49} Anticipatory repudiation is defined as:
 {¶ 50} "(a) a statement by the obligor to the oblige indicating that the obligor will commit a breach that would of itself give the oblige a claim for damages for total breach * * *, or
 {¶ 51} "(b) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." Burke v.Athens (1997), 123 Ohio App.3d 98, 103, citing Restatement of the Law 2d, Contracts (1981) Section 250.
 {¶ 52} Moreover, "a repudiation of an agreement * * * is a `refusal to perform [a] duty or obligation owed to another party.'" Perrine v.Perrine (Dec. 9, 1998), 9th Dist. No. 19024, 1998 Ohio App. LEXIS 5870, *9, quoting Black's Law Dictionary (6 Ed. 1990), 1303.
 {¶ 53} Under the circumstances, the contract upon which this cause is premised required the Bridges to pay $ 7,000 down on the hard surface materials and installation and pay the remaining balance uponcompletion. After the installation was completed, *Page 16 
the Bridges did not pay the remaining balance. Mr. Bridge wrote to Carpet One expressing his inability to follow the terms of the payment plan. This failure to pay placed them in breach of contract. However, the record indicates that Carpet One accepted the Bridges' offer to be paid upon release of the escrow funds. Nevertheless, Carpet One made various attempts to remedy the alleged problems but were repeatedly rebuffed. The facts demonstrate Carpet One honored its warranty and, we believe, it is in this specific factual context that Rosborough's deposition testimony must be viewed. At trial, Rosborough testified that she could not provide a warranty on products for which a customer had not paid. She specifically testified:
 {¶ 54} "* * * to get a warranty, you have to pay for it. You can't buy a t.v. — you can't steal a t.v. from a store and expect a warranty on it, and put a warranty on it and submit it for a claim. The Bridges didn't pay for it, you can't get floor installing [sic] in your house and put a claim for it if you didn't pay for it."
 {¶ 55} In light of this testimony, Rosborough acknowledged that Carpet One made various efforts to promptly address Mr. Bridge's concerns to his satisfaction prior to filing suit but were met with resistance. Ms. Rosborough testified:
 {¶ 56} "We tried several times in 2001 to repair, that's why we ordered all that material to go above and beyond to make these minor repairs for the Mr. Bridge [sic] to make him happy. When he refused to let us back in the house to do those repairs, that's when we started the lawsuit."
 {¶ 57} In view of this testimony, we hold Carpet One, through Rosborough did not repudiate the warranty; on the contrary, it attempted to address the Bridges' concerns but were denied the necessary access to do so. As such, we do not view *Page 17 
Rosborough's testimony as a renunciation of Carpet One's duties under the contract. Rather, the testimony upon which the Bridges seize merely reflects Rosborough's belief that Carpet One's attempts to placate the Bridges were supererogatory and grounded upon an interest in cultivating good will amongst its customer base. When it became apparent to Carpet One it could not resolve the matter in this way, it filed suit.
 {¶ 58} Construing the evidence in a light most favorable to Carpet One and Rosborough, we believe reasonable minds could conclude Rosborough's testimony was neither a disclaimer nor a repudiation of the warranty at issue. Therefore, the trial court properly denied the Bridges' motions for directed verdict and judgment notwithstanding the verdict. Furthermore, the trial court's denial of appellant's alternative motion for a new trial was reasonable and supported by the weight of the evidence.
 {¶ 59} The Bridges' first assignment of error lacks merit.
 {¶ 60} Home Solicitation Sales Act and Motion for SummaryJudgment
 {¶ 61} Under their second assignment of error, the Bridges argue the trial court erred in denying their motion for summary judgment as it pertained to their counter claim premised upon the Home Solicitation Sales Act ("HSSA").
 {¶ 62} The Home Solicitation Act is designed to provide a consumer with a weapon against high pressure sales tactics occurring in the home.R. Bauer Sons Roofing Siding, Inc. v. Kinderman (1992),83 Ohio App.3d 53, 63, citing Brown v. Martinelli (1981), 66 Ohio St.2d 45, 50. R.C. 1345.21(A) defines a "home solicitation sale" as:
 {¶ 63} "* * * a sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the *Page 18 
buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business. * * *"[7]
 {¶ 64} R.C. 1345.21(A)(1) through (7) delimits four types of transactions which are excepted from the foregoing definition. In its judgment entry awarding Carpet One and Rosborough summary judgment, the trial court determined the instant transaction fell within the exception set forth under R.C. 1345.21(A)(3), which provides:
 {¶ 65} "[A home solicitation sale does not occur when] [t]he final agreement is made pursuant to prior negotiations in the course of a visit by the buyer to a retail business establishment having a fixed permanent location where the goods are exhibited or the services are offered for sale on a continuing basis."
 {¶ 66} The trial court determined that the transaction at issue was not a home solicitation sale because Redlin's recommendation occurred at the construction site of the Bridges new home, not their residence. However, the trial court observed:
 {¶ 67} "Even if the new house could be considered a residence, the final agreement to install the carpet and hardwood floor was signed at Carpet One's retail business establishment thus falling under the exception found in R.C. 1345.21 (A)(3)."
 {¶ 68} The evidence supports the trial court's conclusion. Lisa Bridge testified at her deposition that although she could not remember if she signed the purchase invoice at Carpet One, she had visited Carpet One on several occasions to consider various *Page 19 
carpet, tile, and/or vinyl samples.[8] Mrs. Bridge also testified she remembered returning to Carpet One to communicate her decisions. Mrs. Bridge stated: "I remember going back there after I had made all the decisions on the first floor. I remember going back and looking for floor covering for the 2 bathrooms upstairs." Mrs. Bridge's testimony implies she was offered carpet, tile, and/or vinyl selections at Carpet One's store. After entertaining the selections, she accepted Carpet One's offer(s) and signed the purchase invoice.
 {¶ 69} Furthermore, Laura Rosborough testified Lisa Bridge contacted her after Redlin's referral. Mrs. Bridge then made an appointment with Rosborough to discuss the details of the Bridges' flooring and carpet needs. After Mrs. Bridge made her final selections, Rosborough testified Mrs. Bridge signed the purchase invoices on July 5, 2000, at CarpetOne. The following exchange took place at Ms. Rosborough's deposition:
 {¶ 70} "Q. Okay. Do you recall where Lisa signed that [purchase invoice]?
 {¶ 71} "A. At Carpet One.
 {¶ 72} "Q. How do you know that?
 {¶ 73} "A. Because I signed it with her when I was working.
 {¶ 74} "Q. You remember that?
 {¶ 75} "A. To the best of my knowledge * * * That's where I sign all my jobs." *Page 20 
 {¶ 76} When read together, the foregoing testimony demonstrates the exception set forth under R.C. 1345.21(A)(3) operates to exclude the instant transaction from the universe of "home solicitation sales" prohibited by R.C. 1345.21, et seq. Even when viewed in a light most favorable to the Bridges, it is clear that the final agreement was made pursuant to prior negotiations in the course of Mrs. Bridge's visits to Carpet One's retail establishment, which has a fixed location in Ohio where the goods and services involved in the transaction are regularly offered or exhibited for sale.
 {¶ 77} With this analysis in mind, the Bridges contend the trial court's decision runs contrary to this court's decision in Kamposek v.Johnson, 11th Dist. No. 2003-L-124, 2005-Ohio-344. In that case, the Johnsons operated a construction company and the Kamposeks contacted them regarding construction improvements to their home. Ms. Johnson went to the Kamposeks' home and offered a proposal of work to be performed which was accepted by the Kamposeks. The proposal was extensive and called for construction of a pole barn, an addition to the residence, new windows, converting a garage into a bedroom and bathroom, and the installation of siding on the entire house. The agreed price for the job was $ 28,800. The Johnsons provided an initial payment of $ 626 and, approximately six weeks into the project, they tendered a second payment of $ 10,526.66. Some six weeks later, the Johnsons requested final payment. Unhappy with the quality of the work, the Kamposeks refused to make the final payment. The Johnsons ceased work on the project.
 {¶ 78} The Kamposeks filed suit for breach of contract and sought rescission of the same. Prior to trial, the Kamposeks sent a letter to Mrs. Johnson cancelling the contract. Both parties filed motions for summary judgment. The trial court granted the *Page 21 
Kamposek's motion for summary judgment ruling the contract was subject to the HSSA. Because the contract fell within the gamut of the HSSA, the trial court determined the Johnsons were required to give the Kamposeks notice of cancellation pursuant to R.C. 1345.23. The trial court found that the Johnsons' failure to provide such notice was a deceptive act or practice pursuant to R.C. 1345.28. Finally, the trial court granted a rescission of the contract and ordered the Johnsons to reimburse the Kamposeks their payments made toward the remodel.
 {¶ 79} On appeal, this court held the trial court was correct in holding the transaction was within the scope of the HSSA. Id. at ¶ 17. Further, this court observed no exceptions under R.C. 1345.21 applied to the evidence before the court. Id. at ¶ 19-21. Specifically, R.C.1345.21(A)(4) did not except the transaction from application of the act because "* * * there was no evidence that the Johnsons had a business establishment * * *." Id. at ¶ 19. Moreover, this court held R.C.1345.21(A)(6) did not apply because "home improvement contracts * * * are subject to the HSSA and are not excluded by the (A)(6) exclusion." Id. at ¶ 20, citing Papp v. J W Roofing General Contracting (Dec. 17, 1999), 2d Dist. No. 17904, 1999 Ohio App. LEXIS 6042, *2. (Emphasis sic).
 {¶ 80} The instant matter is fundamentally distinguishable fromKamposek. First of all, the trial court below did not address the exceptions considered by the court in Kamposek. Rather, the trial court concluded the transaction at issue was excepted from the HSSA by virtue of R.C. 1345.21(A)(3). For this reason alone, we fail to see an analogy between the holding in Kamposek and the trial court's application of the law in this case. *Page 22 
 {¶ 81} That salient distinction aside, there are significant factual incongruities between the case sub judice and Kamposek. First, in the instant matter, there were no agreements entered into at the Bridges' residence; in Kamposek, the buyer and seller entered into their agreement at the residence of the buyer. Moreover, in this case, Carpet One has a "fixed permanent location where the goods are exhibited or the services are offered for sale on a continuing basis." Alternatively, the seller in Kamposek had no fixed retail establishment at which they displayed goods or offered their services. Finally, Mrs. Bridge testified she visited Carpet One's store to select samples for her flooring décor and returned to the store to finalize or disclose her final selections. Kamposek had no similar factual components. In short, we see no meaningful analogy between this case and Kamposek. We therefore hold, despite the Bridges' exhortations to the contrary, the trial court was not bound to follow this court's holding inKamposek.
 {¶ 82} Finally, we believe it necessary to comment upon the Bridges' assertion that summary judgment was inappropriate because, pursuant to R.C. 1345.25, they were entitled to a presumption that the underlying transaction was a "home solicitation." R.C. 1345.25 provides:
 {¶ 83} "Where a sale is made pursuant to negotiations that occur at a place other than the seller's fixed location business establishment where goods or services are offered or exhibited for sale, but the agreement or offer to purchase is signed at a seller's fixed location business establishment, a presumption arises that the sale was a home solicitation sale." *Page 23 
 {¶ 84} As discussed in footnote 5, supra, the Bridges' position undercuts the substantive merits of their second assignment of error because it acts as a tacit admission that the agreement was consummated at Carpet One's store. However, irrespective of its effects on the merits of their challenge, we fail to see how being entitled to a legal presumption would preclude summary judgment. Assuming arguendo the Bridges were entitled to the presumption, presumptions are rebuttable. Here, even when viewed in light of R.C. 1345.25, the evidence is such that reasonable minds could come to but one conclusion, viz., that the exception set forth in R.C. 1345.21(A)(3) operates to set the instant transaction outside the scope of transactions falling under the rubric of "home solicitation sales."
 {¶ 85} Appellants' second assignment of error is without merit.
 {¶ 86} Jury Instructions
 {¶ 87} Under their third assignment of error, the Bridges argue the trial court committed plain error when it omitted jury instructions to which both parties allegedly agreed. Specifically, the Bridges assert the agreed upon instructions purportedly set forth nine acts or practices prohibited under the CSPA and then stated:
 {¶ 88} "If you find by the greater weight of the evidence that Carpet One committed, any of these acts or practices, then you must return a verdict in favor of the defendants Mr. Mrs. Bridge."
 {¶ 89} However, the Bridges maintain the foregoing paragraph was left out of the formal charge. They conclude the omitted paragraph in the alleged agreed upon jury instructions, "was the only instruction directing under what circumstances the jury `must' *Page 24 
[according to law] return a verdict in favor of [a]ppellants." (Emphasis sic.) We disagree.
 {¶ 90} On October 19, 2006, subsequent to perfecting their appeal, the Bridges moved this court to supplement the appellate record. The Bridges alleged the record did not include the proposed jury instruction set forth above but should be supplemented to reflect its submission. This court elected to construe the Bridges' motion as a motion to remand the matter to supplement the record. In so doing, this court granted the motion pursuant to App.R. 9(E). On remand, the trial court determined the jury instructions at issue should not be made part of the record. The court stated:
 {¶ 91} "It is * * * ordered that the proposed jury instructions that defendants now seek to include in the record by * * * way of their motion to supplement the record were not before the trial court in this case, were not filed by defense counsel with the Clerk of Courts, were not inadvertently omitted from the record by error or accident and should not be made a part of the record. The record should not be supplemented to include those proposed jury instructions."
 {¶ 92} After discussions with counsel and careful consideration of the record as well as its independent notes regarding jury instructions, the trial court determined the alleged "omitted" jury instructions were neither agreed to nor submitted for inclusion. Because the instructions at issue were not part of the trial court record, the trial court did not omit any of the "agreed upon" instructions. The Bridges' allegations in this respect are without basis. *Page 25 
 {¶ 93} With this in mind, we point out that the trial court afforded counsel the opportunity to remove or supplement the instructions before the jury was sequestered. Immediately after the court charged the jury, the following exchange took place.
 {¶ 94} "THE COURT: * * * I need to ask [appellees' counsel], do you have any objections, additions, corrections, or deletions to the instructions I have given to the Jury?
 {¶ 95} "[APPELLEES' COUNSEL]: No, Your Honor.
 {¶ 96} "THE COURT: [Appellants' counsel], same question, do you have any objections, additions, corrections, or deletions to the instructions I have given to the Jury?
 {¶ 97} "[APPELLANTS' COUNSEL]: May we approach, Your Honor?
 {¶ 98} "THE COURT: You certainly may.
 {¶ 99} "(The Court and counsel conferred at the bench, out of the hearing of the Jury and this reporter.)
 {¶ 100} "THE COURT: Because of the multiple claims I want to make it clear that it is possible for you to find a verdict in favor of the Plaintiff as to the complaint and also find a verdict in favor of the Defendant as to the counterclaim. They are not mutually exclusive. It all depends on your findings, but you will have a verdict form for each separate claim, and the instructions are there as to each one of your response and verdict on each of those claims. It is possible, depending on your finding, that the Plaintiff can prevail on the complaint and the Defendant can prevail on the counterclaim. Suppose that leads to the offsetting of damages you were asked to provide damages as to each, if you get to that point. *Page 26 
 {¶ 101} "Is there anything else I need to add?
 {¶ 102} "[APPELLANTS' COUNSEL]: We are satisfied, Your Honor. Thank you."
 {¶ 103} The court specifically solicited counsels' input as to whether the instructions were adequate. Both counsel for Carpet One and, more importantly, counsel for the Bridges maintained the court's charge was satisfactory. The Bridges' counsel had an opportunity to object to the jury instructions and/or request the addition of the jury instructions to which he now directs this court's attention. He did neither. In short, counsel's failure to object operates as a waiver of the jury instruction issue on appeal. See Civ.R. 51(A); see, also, Flint v. AceDoran Hauling and Rigging Co. (June 30, 1999), 11th Dist. No. 97-P-0116, 1999 Ohio App. LEXIS 3091, *9.
 {¶ 104} Although there was no objection to the omission, we shall nevertheless review its impact for plain error. A "plain error" is an obvious and prejudicial error which affects the character and confidence of the underlying proceedings. Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 121. However, the doctrine of plain error is not favored in civil cases and should be applied in extremely rare circumstances. Id.
 {¶ 105} In general, a trial court must provide a jury with instructions which are a complete and accurate statement of the law.Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12. Here, the court advised the jury that the CSPA "prohibits deceptive, unfair, or unconscionable acts or practices in consumer transactions." After discussing the nature of deceptive or unconscionable conduct, the court continued: "Certain types of conduct have been declared by rules or previously determined by Courts of this state *Page 27 
to constitute unfair, deceptive or unconscionable acts or practices in violation of the Consumer Sales Practices Act." The court then enumerated nine circumstances which it stated were instances of unfairness, deception, or unconscionable conduct. The court's instructions on the CSPA concluded with the following directive:
 {¶ 106} "If you find that Plaintiff Carpet One did not commit any unfair, deceptive, or unconscionable act or practice, then you will sign the verdict for Plaintiff on the Consumer Sales Practice Act claim and will not consider damages. However, if you find that Plaintiff Carpet One committed one or more unfair, deceptive, or unconscionable acts or practices, you will proceed to determine the amount of compensatory damages the Defendants incurred or suffered as a result of the violations."
 {¶ 107} Given these instructions, the jury was reasonably and thoroughly apprised of the applicable law and the circumstances under which it would be required to render a verdict in the Bridges' favor. Accordingly, we hold the trial court's instruction pertaining to the Bridges' CSPA claim was sufficiently complete and correct. The failure to include the jury instruction at issue was of no moment and thus does not rise to the level of plain error.
 {¶ 108} Appellants' third assignment of error is without merit.
 {¶ 109} Based upon the foregoing analysis, the Bridges' three assignments of error are overruled and the judgment of the Lake County Court of Common Pleas is affirmed.
COLLEEN MARY OTOOLE, J., concurs in judgment only,
GENE DONOFRIO, J., Seventh Appellate District, sitting by assignment, concurs.
[1] The record reveals a total of five contracts entered into by the parties. The first contract, discussed above, was signed on July 5, 2000. On July 11, 2000, the parties entered into a second contract for the materials and work required to finish the kitchen island. This contract specified that the Bridges' builder would have the substructure of the island constructed prior to Carpet One's installation of the top tiling. Also on July 11, 2000, the Bridges placed an order, signed by Mrs. Bridge, for stair rods, brackets, and additional carpet. The fourth contract was memorialized on August 21, 2000, and included a tile order for a Jacuzzi tub; finally, on October 2, 2000, Lisa Bridge ordered additional tile for her fireplace.
[2] This letter was stamped with Lisa Bridge's signature. During the proceedings below, it was established that Laura Bridge had given William Bridge power of attorney. He testified he frequently authored letters or sent faxes with her name stamp.
[3] "Workmanlike manner" is defined as "the customary way of doing or performing the work in the community where the work is to be performed. The test of workmanship is not what either party individually expects or would like. It is a performance of the work equal to that customarily done by others in the same trade in the same community or the same type of work." Salewsky v. Williams (Sept. 17, 1990), 5th Dist. No. CA-8131, 1990 Ohio App. LEXIS 4206, *9, citing, 3 Ohio Jury Instructions — Civil, para. 253.04(4), p. 484.
[4] We point out that Peter Fahey, a hard wood floor inspector holding a provisional certification with the National Wood Flooring Association, testified as an expert for Carpet One at trial. Mr. Fahey inspected the issues of which the Bridges' complained and concluded that the wood floors were, overall, in good condition. Mr. Fahey asserted that the damage at issue likely developed after installation: the chip, from an external source and the crack, from the effects of moisture.
[5] We emphasize that the inquiry into whether a project is of "workmanlike" quality involves an objective, not a subjective measurement of the finished product. See, Salewsky, supra. Mr. Bridge's letter opines that Carpet One's suggested manner of repair, viz., replacing the damaged floor planks with undamaged planks, was "incorrect." The record indicates, however, this method of repair is accepted by the National Wood Flooring Association as well as the flooring manufacturer itself.
[6] Moreover, appellant's alternative motion for a new trial was grounded upon Civ.R. 59(A)(6), which allows a trial court to order a new trial if the judgment is not sustained by the weight of the evidence. We review a trial court's decision to grant or deny a Civ.R. 59(A) motion for an abuse of discretion. Means v. Smurfit-Stone Container Corp. 11th Dist. No. 2004-A-0048, 2005-Ohio-6159, at ¶ 11.
[7] Although it is not altogether clear whether Terry Redlin was acting on behalf of Carpet One when he recommended its services, the trial court properly assumed Redlin was so acting for purposes of the underlying summary judgment exercise.
[8] In their brief, appellants appear to concede the final agreements were reached and entered into at Carpet One's retail establishment. Specifically, appellants assert summary judgment was inappropriate because they were entitled to a presumption that the underlying transaction was a prohibited home solicitation pursuant to R.C. 1345.25. However, in order to enjoy the presumption set forth under that subsection, a party must admit "the agreement or offer to purchase is signed at a seller's fixed location business establishment." While the substance of this argument shall be discussed in greater detail infra, we believe appellants' ostensible concession on this issue serves to underscore the soundness of the trial court's conclusion. *Page 1