JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} After a bench trial, the trial court entered judgment in favor of defendant-appellee, Active Plumbing Supply Co., and against plaintiffs-appellants, Joni Mihelich and Ram Management Group, Inc., on their breach of contract claim. We affirm.
I. Background
 {¶ 2} The evidence at trial revealed the following. Active Plumbing sells and delivers kitchen cabinets. In February of 2005, Joni Mihelich began working with Active Plumbing's representatives regarding new kitchen cabinets for her home. On March 28, 2005, Joni's husband, Richard Mihelich, signed a contract with Active Plumbing, on behalf of his consulting company Ram Management Group, for custom-made cabinets for the Mihelichs' home. The cost of the custom cabinets, to be manufactured by Omega, was $34,105. Richard signed every page of the 17-page contract, which detailed the cabinet design, cost, and delivery date of May 15, 2005, and made a down payment of $17,000 for the cabinets.
 {¶ 3} One week later, on April 4, 2005, Richard sent a letter to Active Plumbing in which he complained that appellants had been overcharged for the cabinets by more than $12,000 and were the victims of "bait and switch" tactics. Richard requested that Bob Kirk, Active Plumbing's sales manager, contact him *Page 4 
at his "earliest convenience to communicate your action plans to correct this situation."
 {¶ 4} Because of the serious nature of Richard's allegations, and because the cabinets were to be custom-made, Kirk brought the letter to the attention of Active Plumbing's store manager, Stu Bennett, on April 8, 2005. Bennett immediately called Richard at the number he had provided in his letter. When Richard did not answer, Bennett left a message on Richard's voicemail in which he asked Richard to call him and told him that the cabinets would not be ordered until his concerns had been resolved.
 {¶ 5} Richard did not call Bennett back in the next several days. He finally called Bennett back on April 11, 2005, after the store had closed. Bennett called Richard back on the morning of April 12, 2005; Richard did not answer the call and Bennett left a message asking Richard to call him. That afternoon, when Richard still had not called, Bennett called him again and left another message.
 {¶ 6} Richard did not return Bennett's calls until April 13, 2005. In his conversation with Bennett, Richard again complained that appellants had been overcharged for the cabinets. Bennett explained to Richard that the cabinets had not yet been "released" for production by the manufacturer due to Richard's pricing concern.
 {¶ 7} Later that afternoon, Bennett called Richard and offered him two options: 1) a cost reduction of $1,700 to continue with the contract, and Active *Page 5 
Plumbing would "release" the cabinets for production at the next production release date; or 2) cancellation of the contract, a refund to Richard of his deposit, and free use by appellants of the plans that Active Plumbing had drawn up for the Mihelichs' kitchen. Richard elected the $1,700 discount and told Bennett to "move forward" with the contract.
 {¶ 8} Accordingly, on April 19, 2005, the next production release date, Active Plumbing "released" the cabinets for production. Subsequently, on May 4, 2005, Omega, the cabinet manufacturer, advised Active Plumbing that the cabinets would be delivered around May 31, 2005 (not May 15, 2005 as specified in the original contract before the pricing dispute).
 {¶ 9} When Bennett telephoned Richard and advised him of the delivery date, Richard "went ballistic" and informed Bennett that the delivery date was "unacceptable." He also told Bennett that if the cabinets were not delivered by May 15, "it's going to start costing you a lot of money." Bennett testified that Richard's concerns prior to that time had been solely about the cabinet pricing, and that he had never communicated to Bennett that a later delivery date would be a problem, despite Bennett's numerous advisements that the cabinets would not be ordered until the pricing issue had been resolved.
 {¶ 10} Later that day, Bennett advised Richard that Active Plumbing was terminating the contract and refunding his deposit. The next day, Active Plumbing sent a letter to the Mihelichs advising them that the contract was *Page 6 
being terminated; a check for a full refund of the deposit was included with the letter. The Mihelichs did nothing to dispute the termination of the contract until appellants filed this lawsuit approximately one year later.
 {¶ 11} In the meantime, they tried to order the same Omega cabinets from other cabinet distributors. A representative from Warehouse Cabinets, who Richard contacted in either April or May 2005, testified that Warehouse Cabinets could have provided the same Omega cabinets to the Mihelichs within six to eight weeks of their order. The Mihelichs did not order from Warehouse Cabinets, however, and continued to contact other cabinet distributors. Eventually they contracted with Somrak Kitchens for a complete kitchen redesign. Darlene Somrak, a designer at Somrak Kitchens, testified that she worked with Joni Mihelich for about eight months before the Mihelichs finalized the contract with Somrak Kitchens. The new kitchen was completed in January 2006 at a cost of $57,563.
 {¶ 12} In September 2006, appellants filed suit for breach of contract. They sought damages as follows: $57,563 for the cost of the new kitchen cabinets; $16,642.50 for a general contractor to install the cabinets (the contract with Active Plumbing did not include installation); $12,000 for Richard Mihelich's lost vacation time; $37,506 for the cost of meals eaten out for 266 days when the Mihelichs' kitchen allegedly could not be used; $30,969.15 for the Mihelichs' loss of use of their home during the kitchen remodeling project (although they lived *Page 7 
in their home the entire time); all with interest at 18 percent, plus $18,783.33 in attorneys' fees.
 {¶ 13} The trial court entered judgment in favor of Active Plumbing and against appellants. The court held that Active Plumbing rightfully cancelled the contract because appellants repudiated the contract price when Richard Mihelich claimed they were the victims of "bait and switch" tactics and demanded a reduction in the price. The trial court found that the revised contract, with a $1,700 price reduction but a delayed delivery time, was not acceptable to appellants, and therefore Active Plumbing rightfully cancelled the contract "because plaintiffs had repudiated the price and would not accept the cabinets." The trial court held further that appellants acquiesced in the cancellation of the contract. Finally, the trial court held that the damages claimed by appellants were "completely unsupported and absurd." The court found that appellants were "asking for damages [of] over a quarter of a million dollars for $34,000 cabinets that they could have had in 6-8 weeks. The plaintiffs themselves are responsible for their kitchen problems."
II. Discussion
 {¶ 14} Appellants argue on appeal that the trial court's judgment was in error because they did not repudiate the contract but "merely complained" to Active Plumbing. They contend that affirming the trial court's decision will *Page 8 
mean that in the future vendors will cancel customer contracts any time a consumer takes a "strong stand" with the vendor. We are not persuaded.
 {¶ 15} Under R.C. 1302.68, when either party to a commercial contract for the sale of goods repudiates the contract "with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other," the aggrieved party may resort to any remedy for breach set forth in R.C. 1302.77. The remedies include cancelling the contract.
 {¶ 16} A party repudiates a contract when the party insists upon terms contrary to the parties' agreement to the point where that insistence "amounts to a statement of intention not to perform except on conditions which go beyond the contract." Official Comment to R.C. 1302.68. The repudiating party must clearly and unequivocally relay its intention not to perform its contractual obligations. Rodata, Inc. v. Christian Timbers, 8th Dist. No. 79439, 2002-Ohio-3, citing Am.Bronze Corp. v. Streamway Products (1982), 8 Ohio App.3d 223, paragraph three of the syllabus. A mere request for a change in the terms or a request for cancellation of the contract is not in itself enough to constitute a repudiation. Lancaster v. Rahlfs (June 2, 1994), 8th Dist. No. 66146. Whether a repudiation occurred is a question of law. Id., citing Nuco Plastics, Inc. v. Universal Plastics,Inc. (1991), 76 Ohio App.3d 137.
 {¶ 17} We find no error in the trial court's conclusion that Richard's letter to Active Plumbing was a repudiation of the pricing element of the contract. *Page 9 
Only one week prior to his letter, Richard had initialed every page of appellants' 17-page contract with Active Plumbing, which explicitly set forth the terms of the contract, including the $34,105 cost. But, in his letter, sent only days after signing the contract, Richard complained that Active Plumbing had used "bait and switch" tactics to make the sale and overcharged appellants nearly $12,000 for the cabinets, and then instructed Bob Kirk to contact him "to communicate your action plans to correct this situation." We read this as a clear statement of appellants' intention not to pay the contract price for the cabinets. In light of appellants' repudiation, Active Plumbing could have rightfully cancelled the contract at this point.
 {¶ 18} Instead, Active Plumbing offered appellants either a reduced price for the cabinets and a later delivery date or cancellation of the contract. Richard accepted the reduced price and agreed to modify the contract. However, when Bennett subsequently advised him of the new delivery date (caused by appellants' repudiation), Richard told Bennett the date was "unacceptable" and would cost Active Plumbing "a lot of money." Richard's statements cannot be understood as anything other than a repudiation of the delivery terms of the contract. In light of appellants' second repudiation, Active Plumbing had the right to cancel the contract under R.C. 1302.77. Because Active Plumbing lawfully cancelled the contract, the trial court did not err in entering judgment against appellants. *Page 10 
 {¶ 19} Moreover, even assuming that Active Plumbing wrongfully cancelled the contract, appellants waived any right to sue for its breach because they acquiesced in the cancellation. "A contract will be treated as abandoned when the acts of one party inconsistent with the existence of the contract are acquiesced in by the other party."Hodges v. Ettinger (1934), 127 Ohio St. 460, 463. Abandonment of a contract need not be express, but may be inferred from the conduct of the parties and surrounding facts and circumstances. Bryant v. RichfieldProperties (Sept. 5, 1990), 9th Dist. No. 14533, citingDickson v. Wolin (1934), 18 Ohio Law Abs. 107. In such a case, the parties are restored to their original positions and neither may sue for breach nor to compel specific performance. Hunter v. BPS GuardServ. (1995), 100 Ohio App.3d 532, 541, citing Hodges andBryant, supra.
 {¶ 20} On May 6, 2005, Active Plumbing sent appellants a letter in which it stated that it was cancelling the contract and returning Richard's $17,000 deposit. By failing to notify Active Plumbing after the May 6 cancellation letter and deposit refund that they were disputing the termination and cancellation of the contract, and by retaining and not returning to Active Plumbing the refund check, appellants acquiesced in and agreed to the cancellation of the contract. Accordingly, the trial court properly held that appellants had no cause of action for breach of contract against Active Plumbing. *Page 11 
 {¶ 21} Finally, we agree with the trial court that appellants' claimed damages "were completely unsupported and absurd." As actual damages are an essential element of a breach of contract claim, see, e.g., W WDev. Co. v. Hedrick (Apr. 15, 1999), 8th Dist. No. 73965, and appellants failed to establish any damages, the trial court properly held that their breach of contract claim failed.
 {¶ 22} Appellants' assignment of error is overruled; judgment affirmed.
It is ordered that appellee recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., and FRANK D. CELEBREZZE, JR., J., CONCUR. *Page 1