[Cite as *Sunesis Trucking Co., Inc. v. Thistledown Racetrack, L.L.C.*, 2014-Ohio-3333.]

[Please see vacated opinion at 2014-Ohio-2411.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100908

---

# SUNESIS TRUCKING COMPANY, INC.

### PLAINTIFF-APPELLANT

## vs.

# THISTLEDOWN RACETRACK, L.L.C., ET AL.

### DEFENDANTS-APPELLEES

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-11-770229

**BEFORE:** Keough, J., Rocco, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 31, 2014

**ATTORNEYS FOR APPELLANT**

Mark L. Wakefield
James A. Lowe
Lowe, Eklund, Wakefield & Mulvihill
1660 W. Second Street
610 Skylight Office
Cleveland, Ohio 44113

**ATTORNEY FOR APPELLEES**

Jan L. Roller
Davis & Young
1200 Fifth Third Center
600 Superior Avenue, East
Cleveland, Ohio 44114

ON RECONSIDERATION[1]

KATHLEEN ANN KEOUGH, J.:

{¶1} Plaintiff-appellant, Sunesis Trucking Company, Inc. ("Sunesis"), appeals the following decisions by the trial court: (1) The April 23, 21013 denial of Sunesis's motion for summary judgment on liability, (2) The April 23, 2013 granting partial summary judgment in favor of defendants-appellees, Thistledown Racetrack, L.L.C., Harrah's Entertainment, and Caesars Entertainment Operating Company, Inc., and (3) The January 9, 2014 journal entry dismissing the case with prejudice. For the reasons that follow, we reverse and remand.

{¶2} In June 1994, Randy Hood, owner of Sunesis, entered into an agreement with Carat Company, Inc. d.b.a. Thistledown Racecourse, for the removal of straw and manure from the horse stalls located at Thistledown. Sunesis would haul and sell the straw-manure to mushroom farms in Pennsylvania for profit. According to the terms of the contract, Thistledown did not pay Sunesis for the removal of the manure, but Sunesis would pay Thistledown to supply the labor to operate the roll-off trucks and for eliminating all other stall bedding material that was not straw. The agreement was renewed in 1995 with some modifications.

{¶3} In February 1999 ("1999 contract"), Sunesis and Thistledown, Inc. d.b.a.

[1]The original decision in this appeal, *Sunesis Trucking Co., Inc. v. Thistledown Racetrack, LLC*, 8th Dist. Cuyahoga No. 100908, 2014-Ohio-2411, released June 5, 2014, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

Thistledown Racecourse ("Thistledown"), entered into an agreement similar to that stated above. The contract again provided that Sunesis would haul straw and manure from Thistledown without compensation. The contract provided for ancillary fees and payments associated with the use of shavings as horse bedding materials, which are not relevant to this appeal.

{¶4} Section "III" of the 1999 contract explained the terms of termination and renewal.

> This agreement shall commence on February 1, 1999, and shall remain in full force and effect through December 31, 2002, at which time it will terminate; provided however, that unless either party gives the other at least six (6) month's written notice that it does not desire to renew this contract, then this contract shall automatically renew at the end of the herein contract period under the exact same terms and conditions of this contract. Provided further, however, that if Thistledown does advise Sunesis as aforesaid that it does not desire to renew this contract at the expiration of the herein contract period, Sunesis shall have the right to match any proposals then offered by its competitors, and if Sunesis does so, Sunesis shall be awarded a new contract[.]

{¶5} On August 14, 2009, Hood sent David Ellsworth ("Ellsworth"), general manger of Thistledown, a letter regarding Sunesis's written request for payment for waste removal.

As per our meeting in July, I am writing to advise you and Thistledown that Sunesis Trucking will no longer be able to haul the manure under the current terms. * * * This is why I was taken back when you advised me that you could not work with me at all with paying a fee.

Due to [t]his and the fact that Thistledown is outside of our last contract, accept this as notice that Sunesis Trucking will haul your manure at the following fees.   Effective immediately.

$400 per load of manure hauled.
This includes labor and the use of boxes and our loader to remove manure.

{¶6}   By verbal agreement between Ellsworth and Hood, Thistledown paid Sunesis a "negotiated price" of $250 per load, beginning on August 25, 2009.   Ellsworth testified at deposition that he felt that Thistledown had no choice but to pay Sunesis because they were in the middle of a racing season, which typically begins in April and ends in November.   Furthermore and more importantly, because Thistledown was in bankruptcy proceedings, Ellsworth felt that he would not be able to enter into a new contract with another hauling company during this time.   However, these concerns were not relayed to Hood.

{¶7}   Hood testified at deposition that even if Thistledown refused to pay, Sunesis still would have hauled the manure because it was under contract to perform, and he needed the straw manure to sell to the mushroom farms.

{¶8} On December 11, 2009, Sunesis sent Thistledown a fax indicating its account was past due.   The outstanding invoices were from September 28, 2009 to December 7, 2009, for a total amount due and owing of $23,000.   This amount was paid by Thistledown.

**{¶9}** In April 2010 at the start of the racing season, Hood submitted to Thistledown an "Addendum to Contract" that memorialized the earlier verbal agreement that Thistledown would pay Sunesis $250 for each load of manure it hauled from Thistledown. The addendum was never signed by Ellsworth or any other authorized person from Thistledown.

**{¶10}** On June 28, 2010, Harrah's Entertainment, Inc. sent Sunesis a letter advising that Harrah's had acquired the assets of Thistledown Racetrack through the bankruptcy proceeding. In response, Hood sent Harrah's a letter advising it of the hauling contract and addendum whereby Thistledown was to pay Sunesis $250 per load of hauled manure. It further stated that $21,250 was owed by Thistledown for hauling services. Hood testified that this amount was subsequently paid.

**{¶11}** On August 13, 2010, Ellsworth sent Hood a letter advising him there was a liability concern regarding some of the manure bins that were in disrepair and had caused injury. In the letter, Ellsworth reminded Hood that pursuant to the terms of the 1999 contract, Sunesis was liable for any injury as a result of any environmental risks. Additionally, Ellsworth reiterated: "As you know, Thistledown recently agreed to an increase in haul rates at your urgent request. While that agreement thus far is verbal, we have kept our word and honored it without question."

**{¶12}** Thereafter on October 4, 2010, and after paying Sunesis for a majority of the racing season, Thistledown sent Sunesis a letter rejecting the April 2010 proposed addendum to the 1999 contract. Specifically, the letter stated:

We were not anticipating this sort of charge, which is significant considering that historically, we were not charged for these removal services and, subsequently have not budgeted for the same. While we can appreciate the economic hardships that have impacted everyone, we simply cannot afford to pay the amount requested in the proposed Addendum.

Consequently, we would like to counter your proposal, and offer the following as potential options to discuss:

Thistledown will pay 50% of your proposed fee, or One Hundred Twenty Five Dollars ($125.00) per load for each and every load Sunesis removes from Thistledown for the remainder of the 2010 season, retroactive to September 1, 2010.

Once you have had an opportunity to consider the proposed counter options above, we would like to schedule a meeting to discuss same and finalize for a rate that is palatable to both Thistledown and Sunesis.

The letter was silent as to any subsequent racing seasons.

{¶13} In response, Hood sent Ellsworth a letter on October 12, 2010 expressing some confusion about the letter and explaining why the rate for hauling was necessary:

The above factors, along with the cost of doing business, is what prompted me to request $350 per load last year. After my request, you and I agreed last summer to amend our agreement and that Thistledown would commence paying Sunesis $250 per load. Thistledown has been paying that amount for over a year now. The addendum that you mentioned in your letter was just a follow-up to our conversation and was sent upon your request because you said that you wanted to renegotiate the per load hauling fee. Since we've started a new contract term, I would like to have any potential concerns resolved before racing begins. Rather than discussing that by letters, I think that it would be better if I came up to Thistledown so that we can discuss our ongoing agreement.

{¶14} In a letter to Ellsworth dated November 10, 2010, Hood referenced their meeting the week prior and stated that he could not agree to the counter-proposal, but suggested a scaled-payment schedule for the unpaid amounts from the 2010 racing season.

In the letter, Hood requested,

> If this is agreeable to Thistledown's [sic] and yourself please make the adjustments accordingly and forward payment from September and October.
>
> Just as a note, as I was looking at my file the original amount that I proposed was $350.00 per load[.] You then submitted a letter asking me to cut it to $250.00 per load and I did. I will work on a proposal for next year so that we can have this settled way before the season starts.

Ellsworth testified at deposition that he agreed to this scaled-payment schedule and that all payments were made to Sunesis.

{¶15} In a January 11, 2011 letter, Thistledown terminated the contract "effective immediately."

> Harrah's Ohio Acquisition Company, LLC d/b/a Thistledown ("Thistledown") is hereby placing you on written notice that we will discontinue the use of Sunesis Trucking, Inc.'s ("Sunesis") waste removal and hauling services pursuant to that certain Agreement between Thistledown and Sunesis, dated February 1, 1999 (the "Agreement"). Pursuant to an October 4, 2010 correspondence from Thistledown addressed to you, Thistledown agreed to utilize Sunesis's waste removal/hauling services for the remainder of the 2010 season.
>
> We are now providing this letter as a courtesy notice to you that, effective immediately, we will discontinue utilizing Sunesis's services under the Agreement.

{¶16} Hood responded by letter dated January 26, 2011, explaining that because Thistledown did not give notice of terminating the contract as required, the contract automatically renewed. Additionally, Hood explained that he was surprised about the termination considering the communications between he and Ellsworth about the hauling

rates the year prior.

{¶17} On February 15, 2011, Ellsworth sent Hood a final correspondence explaining that Thistledown had complied with the 1999 contract's termination clause, because the October 4, 2010 letter put Sunesis on notice that Thistledown was terminating the contract for the next racing season, effective April 4, 2011. Even though Thistledown terminated the contract, Ellsworth offered Hood the right of last refusal as provided under the contract to provide waste removal services.

{¶18} Hood responded by letter dated February 24, 2011, explaining Sunesis's interpretation of the contract's termination clause and also inquiring about the bid that Thistledown received for waste removal services. When Hood did not hear back from Thistledown, he sent another letter dated March 21, 2011, again inquiring about the contract and affirmatively stating that Sunesis was ready to perform under the 1999 contract for the 2011 racing season. No response was received from Thistledown.

{¶19} Although the parties disagree as to when the contract was set to renew — Sunesis contends January 1, 2011 and Thistledown contends October 31, 2010 — the parties are not in dispute that the contract had automatically renewed prior to the time of Thistledown's January 11, 2011 letter, and that no party gave the requisite six-month notice of termination as required. Accordingly, the contract renewed under the original terms and conditions, which included the original term that Sunesis would not receive payment from Thistledown for hauling the manure.

{¶20} In February 2012, through a second amended complaint, Sunesis brought suit

against Thistledown alleging breach of the February 1999 contract. Thistledown filed an answer and amended counterclaim for damages alleging that Sunesis had breached the 1999 contract. Both parties moved for summary judgment on the issue of liability only.

{¶21} In granting Thistledown's motion for partial summary judgment the trial court held:

> The court finds that plaintiff gave notice to the defendant on August 14, 2009, that the plaintiff did not desire to renew the 1999 contract. Therefore, notice having been given by the plaintiff, plaintiff cannot allege that defendant breached the contract by failing to give notice within six months of the end of the contract.

{¶22} The trial court further denied Sunesis's motion for summary judgment. As a result, Thistledown dismissed its amended counterclaim with prejudice.

{¶23} Sunesis now appeals the trial court's decision, raising as its sole assignment of error that the trial court erred in granting defendant-appellee Thistledown's motion for summary judgment because a genuine issue of material fact exists as to whether Sunesis's August 14, 2009 letter was merely an addendum proposal as opposed to a definitive statement of non-renewal of the contract.[2]

{¶24} Civ.R. 56(C) provides that summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the

---

[2]Sunesis raises no assignment of error challenging the trial court's denial of its motion for summary judgment or the trial court's decision dismissing the case with prejudice. Accordingly, those decisions raised in the notice of appeal are deemed abandoned in this appeal. *See* App.R. 12 and 16.

motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc*., 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201; *Temple v. Wean United, Inc*., 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.

{¶25} Thistledown moved for partial summary judgment contending that Sunesis's August 14, 2009 letter was an anticipatory repudiation of the 1999 contract and, therefore, Thistledown was not obligated to follow the terms of the 1999 contract by giving the requisite six-month notice of termination. Sunesis moved for partial summary judgment contending that because Thistledown conceded that it did not provide the requisite six-month notice of termination of the 1999 contract, it was entitled to judgment as a matter of law.

{¶26} Contrary to the trial court's reasoning in granting Thistledown's partial summary judgment, a plain reading of the August 14, 2009 letter does not evidence that Sunesis was giving Thistledown notice of termination. Nowhere in the letter does it state that it was terminating the contract and that the contract would not automatically renew at the expiration of its term.

{¶27} Moreover, we disagree with Thistledown's position that the subsequent verbal agreement to pay for hauling services was a new contract and, therefore, the trial

court's decision was correct. The correspondence exchanged between Hood and Ellsworth clearly demonstrate that both Sunesis and Thistledown believed they were still operating under the 1999 contract.

{¶28} Accordingly, the sole underlying issue in this appeal is whether Sunesis's August 14, 2009 letter establishes an anticipatory breach of the contract, thereby, excusing Thistledown from its obligations under the contract.

{¶29} Where one party to a contract refuses to perform under the terms of the contract, an anticipatory repudiation is said to occur. *Blake Homes, Ltd. v. FirstEnergy Corp.*, 173 Ohio App.3d 230, 2007-Ohio-4606, 877 N.E.2d 1041 (6th Dist.). "'An anticipatory breach of contract by a promisor is a repudiation of the promisor's contractual duty before the time fixed for performance has arrived.'" *McDonald v. Bedford Datsun*, 59 Ohio App.3d 38, 40, 570 N.E.2d 299 (8th Dist.1989), quoting *Smith v. Sloss Marblehead Lime Co.*, 57 Ohio St. 518, 49 N.E. 695 (1898).

{¶30} To prevail on a claim of anticipatory breach of contract, a plaintiff must establish that there was a contract containing some duty of performance not yet due, and that by word or deed, the defendant refused future performance, causing damage to the plaintiff. *Metz v. Am. Elec. Power Co., Inc.*, 172 Ohio App.3d 800, 2007-Ohio-3520, 877 N.E.2d 316, ¶ 35 (10th Dist.).

{¶31} However, an anticipatory breach of contract must be an unequivocal repudiation of the contract. *McDonald* at paragraph one of the syllabus; *Sentinel Consumer Prods., Inc. v. Mills, Hall, Walborn & Assocs., Inc.*, 110 Ohio App.3d 211, 673

N.E.2d 967 (11th Dist.1996). "'A mere request for a change in terms or for cancellation does not constitute a repudiation.'" *McDonald* at paragraph one of the syllabus, quoting 4 Corbin, *Contracts* (1951), Section 973 at 905-906 (1951). Similarly, "a mere expression of doubt as to willingness or ability to perform is insufficient to constitute repudiation of a contract." *Farmers Comm. Co. v. Burks*, 130 Ohio App.3d 158, 172, 719 N.E.2d 980 (3d Dist.1998).

{¶32} If a party has reasonable grounds to believe that the other party will not perform under the contract, that party may demand adequate assurance of performance from the other; the failure to provide such assurance is treated as a repudiation of the contract. *Burke v. Athens*, 123 Ohio App.3d 98, 703 N.E.2d 804 (9th Dist.1998).

{¶33} If an anticipatory breach of contract is found to occur, the injured party has the option of (1) terminating the contract and suing the breaching party immediately, or (2) continuing the contract and suing the breaching party for damages after the time for performance has passed. 18 Ohio Jurisprudence 3d Contracts, Section 238 (2011); *see also S.E. Land Dev. Ltd. v. Primrose Mgmt. L.L.C.*, 193 Ohio App.3d 465, 472-473, 2011-Ohio-2341, 952 N.E.2d 563 (3d Dist.).

{¶34} In this case, the dispositive facts are undisputed; therefore, whether an anticipatory breach occurred is a question of law for this court to decide. *Milelich v. Active Plumbing Supply Co.*, 8th Dist. Cuyahoga No. 90965, 2009-Ohio-2248, ¶ 16, citing *Lancaster v. Rahlfs*, 8th Dist. Cuyahoga No. 66146, 94 Ohio App. LEXIS 2377 (June 4, 1994).

{¶35} Thistledown contends that Sunesis's August 14, 2009 letter constitutes a clear and unmistakable breach, and that judgment on the issue of liability in favor of Thistledown was therefore properly entered as a matter of law. In support of its position that the letter establishes an anticipatory breach, Thistledown cites to *Daniel E. Terreri & Sons, Inc. v. Mahoning Cty. Bd. of Commrs.*, 152 Ohio App.3d 95, 2003-Ohio-1227, 786 N.E.2d 921 (7th Dist.).

{¶36} In that case, Terreri was awarded contracts with Mahoning County by the county commissioners for the demolition and renovation of the Higbee building in Youngstown. Terreri filed bid guarantees and performance bonds in the amounts of the proposed contracts. Over a year passed before the contracts were signed.

{¶37} Approximately one month after the contracts were signed, Terreri contacted the commissioners requesting a "notice to proceed" and an increase in the contract price due to the delay since submitting the bid. By letter, Terreri threatened to withdraw its bid if the notice or the price increase in the contract was not forthcoming. In a letter weeks later, Terreri again declared that if the commissioners issued the notice to proceed, the commissioners were also agreeing to the increase in the contract price. The letter also reiterated the proposed increase in the contract price and stated that its bid would be withdrawn if no notice to proceed was received by a date certain. When that date had passed, Terreri sent the commissioners a final letter stating that it was withdrawing from the contracts. When the commissioners subsequently decided to abandon the project, Terreri sued the commissioners for breach of contract, seeking damages for being

prevented from doing any work on the contract.

{¶38} On appeal, the Seventh District found that Terreri clearly and unequivocally abandoned the contract by its letters — first by denying that a contract existed, then by adding additional terms and conditions to the contract, and finally by unilaterally revoking its obligations by withdrawing its bid. *Id*. at ¶ 56, 62, 63. Thus, the court concluded that Terreri was in total breach of the contract by anticipatory repudiation, and all subsequent events were to be viewed in the light of the breach.

{¶39} We find *Terreri* distinguishable from the case before this court. Unlike in *Terreri* where no work was performed, Sunesis had been performing under the 1999 contract for over ten years before it sent the August 14, 2009 letter. Morever, the three letters sent by Terreri clearly and unequivocally stated that it would not perform unless the contract price was increased. Here, Sunesis sent one letter and continued performing under the contract despite not being compensated after the letter was sent.

{¶40} Thistledown relies heavily on the proposition of law contained in *Terreri* that "one form of anticipatory repudiation occurs when a party declares that he or she will not perform the terms of the contract unless the contract price is increased." *Terreri* at ¶ 46, citing *Nuco Plastics, Inc. v. Universal Plastics, Inc.*, 76 Ohio App.3d 137, 141, 601 N.E.2d 152 (11th Dist.1991). However the exact rule of law in *Nuco*, provides that "a demand for additional payment, without refusal to perform until the demand is met, is not a repudiation of the contract." *Id*. at ¶ 141.

{¶41} In this case, Sunesis did not refuse to perform until the demand for payment

was met, and there is no allegation that Sunesis did not haul away the manure as required after it sent the August 14, 2009 letter. The record clearly shows that Sunesis continued with waste removal as required under the 1999 contract, despite not being paid by Thistledown. Sunesis's attempt to unilaterally change the contract price was a mere request to enter into a modification agreement. *See Nuco Plastics*, 76 Ohio App.3d at 141, 601 N.E.2d 152. Thistledown's subsequent negotiation and agreement to the amount further evidences that the August 14, 2009 letter was a request for a modification, not a breach of the contract by anticipatory repudiation.

{¶42} Although Thistledown now characterizes the letter as anticipatory repudiation, meaning that Sunesis was not going to haul the manure unless it received payment, Sunesis's subsequent actions by continuing to haul the manure despite not receiving payment, evidences that the August 14, 2009 letter was a merely a proposed addendum to the contract.

{¶43} This interpretation of Sunesis's letter is consistent with the Thistledown's understanding of the letter at the time of receipt because Thistledown repeatedly characterized and referred to Sunesis's letter as a "proposed Addendum." Moreover, Thistledown engaged in negotiations with Sunesis on the price it would be willing to pay for the manure removal. Finally, Thistledown agreed to the addendum by paying Sunesis. In fact, when Harrah's acquired Thistledown as a result of the bankruptcy, Sunesis notified Harrah's that an outstanding balance of $21,250 for waste removal was due and owing, which was subsequently paid. This evidences that despite not being paid for

hauling the manure, Sunesis still continued to perform under the 1999 contract.

**{¶44}** The record further shows that Thistledown never expressed any concern to Sunesis during this negotiation process that because it was in the middle of the racing season and currently in bankruptcy proceedings, it was unable to contract with another company. Thistledown could have requested an assurance from Sunesis that it would still continue to perform under the contract without receiving payment. If Sunesis did not make an assurance, Thistledown's claim of anticipatory repudiation would have merit.

**{¶45}** Consequently, we find that the trial court erred in granting summary judgment in favor of Thistledown. Sunesis's assignment of error is sustained. The judgment of the trial court is reversed on the issue of liability only; the issue of damages, if any, is not before this court.

**{¶46}** Judgment reversed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

KENNETH A. ROCCO, P.J., and
EILEEN A. GALLAGHER, J., CONCUR