[Cite as *AMP V., LP v. Long Point Energy, L.L.C.*, 2025-Ohio-201.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
HARRISON COUNTY

AMP V, LP,

Plaintiff-Appellee,

v.

LONG POINT ENERGY, LLC,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 HA 0006

---

Civil Appeal from the
Court of Common Pleas of Harrison County, Ohio
Case No. CVH 2023-0029

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Kerri C. Sturm* and *Atty. David A. Jones, Jr.*, Bernstein-Burkley, P.C., for Plaintiff-Appellee and

*Atty. Stephen W. Funk*, *Atty. J. Benjamin Fraifogl*, *Atty. Jeremy D. Martin*, and *Atty. Grant L. McLeod*, Roetzel & Andress, LPA, for Defendant-Appellant.

Dated: January 16, 2025

**HANNI, J.**

{¶1} Defendant-Appellant Long Point Energy, LLC (Long Point) appeals the Harrison County Common Pleas Court denial of its motion for summary judgment and the granting of summary judgment in favor of Plaintiff-Appellee AMP V, LP (AMP). Long Point asserts that the trial court erred by ordering specific performance because the contract between the parties included a "time is of the essence" provision and AMP failed to timely perform. Long Point further contends that AMP breached the contract by requesting the execution of additional documents before closing and failing to notify Long Point until after the closing date that it would not close without those documents. Long Point further asserts that the court erred by altering the plain terms of the agreement when it ordered specific performance.

{¶2} For the following reasons, we find that the trial court properly granted summary judgment in favor of AMP and denied Long Point's motion for summary judgment.

## RELEVANT FACTS

{¶3} The parties agree that on November 14, 2022, they entered into a purchase and sales agreement (Agreement) whereby AMP would buy Long Point's mineral interests underlying three tracts of land. The three tracts were 20 net mineral acres in Flushing Township, Belmont County (Belmont Tract), 78.07 net mineral acres in Washington Township, Harrison County (Harrison Tract), and 25.3756 net mineral acres in Island Creek Township, Jefferson County (Jefferson Tract). The purchase price totaled $416,678.75 and price was determined on a per-acre basis.

{¶4} Article 3.1 of the Agreement imposed a 30-day due diligence period for the Belmont Tract. The Belmont Tract sale timely closed in December 2022.

{¶5} Article 3.1 of the Agreement is captioned "Due Diligence Period," and also provided that AMP had 45 days from the contract execution date to conduct any due diligence it deemed necessary on the Harrison and Jefferson Tracts. Article 3.1 further states in relevant part that:

Seller shall cooperate with Buyer's commercially reasonable requests during such "Due Diligence Period."  In the event Buyer chooses not to purchase a portion or all of the Subject Property due to Buyer's title review, in Buyer's sole discretion, then the Buyer may terminate this Agreement upon the transmittal of written notice of termination at any time during the Due Diligence Period.

{¶6}    Article 7.1 of the Agreement provides:

Liabilities Upon Termination.  If Closing does not occur because Seller or Buyer wrongfully fails to tender performance at Closing or otherwise materially breaches this Agreement prior to Closing, and if the non-breaching Party is not in material default under this Agreement, including, without limitation, specific performance.

{¶7}    Article 7.2 provides:

Default and Remedies.  If Seller or Buyer fails to fully comply with the terms of this Agreement in any way and for any reason, said Party will be in default and the non-defaulting Party may (a) seek specific performance or other equitable remedies, (b) seek other relief as may be provided by law, or both, or (c) terminate this Agreement, thereby releasing both Parties form this Agreement.

{¶8}    Article 9.8 of the Agreement also included a "Further Assurances" clause which states:

From time to time after the Closing Date, Seller shall execute and deliver to Buyer: (a) such additional documents as may be reasonably requested by Buyer to perfect Buyer's title in and to the Subject Property, and (b) such other documents relating to oil and gas production as may be required by Buyers or others.

**{¶9}** The due diligence period for the Harrison and Jefferson Tracts was 45 days, and this period expired on January 20, 2023. Closing was to occur five business days later on January 27, 2023.

**{¶10}** On January 25, 2023, AMP's counsel, Chris Hillis, sent an email to Long Point about closing on the Harrison and Jefferson Tracts. He included closing documents and also requested that Long Point sign two additional documents that he included with his email. The first document requested that Long Point affirm that one of its two members could sign on behalf of the LLC (Authority Affidavit). The second document was an affidavit attesting that Long Point's predecessor in title changed her last name (Identity Affidavit) (collectively Affidavits). Attorney Hillis explained that the Identity Affidavit sought to confirm that Sarah Wiggers, the predecessor in the chain of title for the Jefferson Tract, was the same person as Sarah Sexton, the married person who conveyed the portion of the Jefferson Tract to Long Point. The Identity Affidavit required execution under oath by a third party familiar with Sarah Sexton.

**{¶11}** Neither of these documents had been required for the Belmont Tract sale.

**{¶12}** On January 25, 2023, Long Point member and owner Andrew Lawson emailed Attorney Hillis about the Affidavits. Mr. Lawson commented that Long Point could "try to send the [Identity Affidavit] to Sarah Sexton to see if someone can sign it that knows her." He noted that Long Point had never signed a document like this before.

**{¶13}** Andrew Lawson sent a second email that day to Attorney Hillis and asked whether AMP attempted to obtain the Identity Affidavit. Attorney Hillis responded that it was not AMP's practice to obtain the Affidavits. Attorney Hillis informed Andrew Lawson that he would answer any additional questions from Mr. Lawson.

**{¶14}** Andrew Lawson emailed, asking Attorney Hillis to identify the proper person to sign the Identity Affidavit, and Attorney Hillis responded that a person familiar with Sexton should sign. Mr. Lawson also asked about the Authority Affidavit, and Attorney Hillis responded that it established that Long Point members consented to the sales and the person signing the deed was authorized to consent on behalf of the members.

**{¶15}** On January 26, 2023, Andrew Lawson emailed Attorney Hillis and stated that Long Point would attempt to secure a signature on the Identity Affidavit and have its

counsel review the Consent Affidavit. Lawson and Hillis exchanged additional emails that day, but no mention was made of the closing scheduled for January 27, 2023.

{¶16} No further communications occurred between the parties until February 2, 2023, when Long Point member and owner James Lawson emailed Attorney Hillis. He asked Attorney Hillis to confirm that AMP still needed the additional documents for closing. Attorney Hillis responded, "At this time, we will still need those to proceed to the final closing."

{¶17} On February 8, 2023, Attorney Hillis emailed James and Andrew Lawson that he was "[t]ouching base here to see how the signing is going. Any comments from your counsel on the [Consent Affidavit]?" Later that day, James Lawson emailed Attorney Hillis a letter dated February 8, 2023 from Long Point terminating the Agreement (Termination Letter). In the Termination Letter, James Lawson explained that the closing period expired on January 27, 2023 and AMP failed to close within the closing period.

{¶18} On February 10, 2023, Attorney Hillis called James Lawson about the Termination Letter. James Lawson indicated that the Termination Letter spoke for itself. Attorney Hillis emailed James Lawson that afternoon regarding AMP's intention to close and requested that Long Point execute and deliver the deeds for the Harrison and Jefferson Tracts on or before February 15, 2023. Long Point did not respond.

{¶19} On February 13, 2023, a telephone call occurred between AMP partners Ryan Strawn and Phillip Thomas and James Lawson. Long Point contends that James Lawson repeatedly asked if AMP was removing the requirement of the executed copies of the Identity Affidavit and the Consent Affidavit and AMP provided no response. AMP contends that its partners conveyed to James Lawson that AMP wanted to proceed and close on the Harrison and Jefferson Tracts.

{¶20} AMP sent a letter notifying Long Point that it filed a complaint in the Harrison County Court of Common Pleas. AMP indicated that it would dismiss the complaint if Long Point returned fully executed deeds for the Harrison and Jefferson Tracts within ten business days and AMP recorded those deeds.

**PROCEDURAL HISTORY**

{¶21} On April 10, 2023, AMP filed its complaint against Long Point in the Harrison County Court of Common Pleas. AMP alleged that Long Point breached the Agreement by refusing to sell the Harrison and Jefferson Tracts and AMP was entitled to a declaration that Long Point breached the Agreement. AMP requested specific performance of the Agreement and money damages.

{¶22} On May 12, 2023, Long Point filed a motion to dismiss asserting that AMP was a foreign limited partnership that failed to register with the Ohio Secretary of State and therefore unable to file a claim in an Ohio court under R.C. 1776.87(C). Long Point thereafter dismissed this motion.

{¶23} On March 8, 2024, both parties filed motions for summary judgment.

{¶24} On June 20, 2024, the trial court granted AMP's motion for summary judgment and ordered specific performance of the Agreement by Long Point. The court ordered Long Point to fully execute and notarize the deeds for the Harrison and Jefferson Tracts and deliver them to AMP within 10 days. The court ordered AMP to tender payment within ten days of receiving the fully executed documents from Long Point. The court ordered that upon AMP's tender of payment for the Harrison and Jefferson Tracts, closing under the Agreement would occur.

**SOLE ASSIGNMENT OF ERROR**

{¶25} On June 27, 2024, Long Point filed a notice of appeal. It presents the following sole assignment of error, with three sub-issues for review:

**THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED SUMMARY JUDGMENT TO APPELLEE AND FAILED TO GRANT SUMMARY JUDGMENT IN FAVOR OF APPELLANT**.

**STANDARD OF REVIEW**

{¶26} An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko,* 2005-Ohio-4559, ¶ 8. Thus, we apply the same test as the trial court in determining whether summary judgment was proper.

**{¶27}** A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 2015-Ohio-4167, ¶ 8 (9th Dist.); Civ.R. 56(C).

**{¶28}** The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.,* 104 Ohio App.3d 598, 603 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

**{¶29}** If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993).

## ISSUE FOR REVIEW NO. 1:

**WHETHER A MOVANT SEEKING AN AWARD OF SPECIFIC PERFORMANCE MUST FIRST DEMONSTRATE THAT IT HAS TENDERED PERFORMANCE UNDER THE TERMS OF THE CONTRACT AND IS READY, WILLING AND ABLE TO PERFORM UNDER THE CONTRACT.**

## ISSUE FOR REVIEW NO. 2:

**WHETHER A PARTY TO A CONTRACT THAT UNILATERALLY REQUIRES THE EXECUTION OF DOCUMENTS NOT CONTEMPLATED UNDER THE CONTRACT BEFORE PAYMENT MAY BE MADE HAS REPUDIATED THE CONTRACT, AND THE NON-REPUDIATING PARTY HAS THE RIGHT TO TERMINATE THE CONTRACT**.

**{¶30}** Long Point asserts that the trial court erred by granting summary judgment in AMP's favor because AMP failed to establish that it was entitled to specific performance

for its breach of contract action. Long Point contends that (1) AMP failed to timely tender performance under the Agreement until after the closing date; (2) AMP repudiated and breached the Agreement when it demanded that Long Point execute the Affidavits before it would close on the Harrison and Jefferson Tracts; and (3) AMP did not withdraw its repudiation, which showed that it was not ready, willing or able to perform under the Agreement.

## TIME IS NOT OF THE ESSENCE

**{¶31}** Long Point contends that the Agreement contained "time is of the essence" provisions and AMP's failure to perform under these provisions bars specific performance. Long Point points to the Agreement's lengthy provisions about the 45-day "Due Diligence" period and the 5-day closing period for the Harrison and Jefferson Tracts. It contends that these periods were negotiated to ensure prompt payment and Attorney Hillis was involved in negotiating these provisions on AMP's behalf. Long Point concludes that the specific dates in the Agreement show that time was of the essence and AMP materially breached by refusing to close without execution of the Affidavits. Long Point asserts that this prevents AMP from establishing it did not default under the Agreement and prevents specific performance.

**{¶32}** The trial court's summary judgment order is very general. The court found that no genuine issues of material fact existed as to AMP's breach of contract action and specific performance and it found that AMP was entitled to judgment as a matter of law. The court ordered specific performance of the Agreement. No further analysis was included.

**{¶33}** A trial court's granting of specific performance is subject to an abuse of discretion standard of review. *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 275 (1984). An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶34}** In order to obtain the equitable remedy of specific performance for breach of a contract, a party must establish that: (1) a valid and enforceable contract exists; (2) the party performed or tendered performance; and (3) the party is ready, willing, and able

Case No. 24 HA 0006

to perform all of the acts required by the agreement if some of the acts were not performed. *Bahner's Auto Parts v. Bahner*, 1998 WL 470494, *2 (4th Dist. July 23, 1998), citing 84 Ohio Jurisprudence 3d (1988) 311-312, Specific Performance, Section 34. Specific performance is not available as a remedy unless no other adequate remedy exists at law. *Gleason v Gleason*, 64 Ohio App.3d 667, 672 (4th Dist. 1991). However, "'where land is the subject matter of the agreement, the jurisdiction of equity to grant specific performance does not depend upon the existence of special facts showing the inadequacy of a legal remedy in the particular case.'" *Id.*, quoting 71 American Jurisprudence 2d (1973) 144, Specific Performance, Section 112.

{¶35} In addition, time is generally not of the essence in contractual relationships. *Coldwell v. Moore*, 2017-Ohio-526, ¶ 7 (7th Dist.), citing *Brown v. Brown*, 90 Ohio App.3d 781, 784 (11th Dist. 1993) and *Shelton v. Twin Twp.*, 2015-Ohio-1602, ¶ 40 (12th Dist.). The inclusion of a specific closing date in a contract does not automatically mean that time is of the essence. *Id.* Some courts have implied time is of the essence in a contract from the circumstances surrounding the negotiations and the contract, while others have held that time is not of the essence unless specifically expressed in the agreement. *Coldwell, supra* at ¶ 7, citing *Shelton, supra*, at ¶ 40 (citing cases).

{¶36} "Time is of the essence" means "that performance by one party at the time specified in the contract or within the period specified in the contract is essential in order to enable one party to require performance from the other party." *Coldwell*, 2017-Ohio-526, ¶ 21 (7th Dist.), quoting *Lake Ridge Acad. v. Carney*, 66 Ohio St.3d 376, 378 (1993). However, even if time appears to be of the essence in an agreement, the time may be waived by a party who benefits from the time requirement if that party acts inconsistently with the time requirement. *Hacker v. Natl. College of Business & Technology*, 2010-Ohio-380, ¶ 12, quoting *Sandler v. All Acquisition Corp.*, Inc. 954 F.2d 382, 385 (6th Cir. 1992), quoting *Hayes Mfg. Corp. v. McCauley*, 140 F.2d 187, 190 (6th Cir. 1944).

{¶37} The trial court in the instant case did not address whether the Agreement contained a time is of the essence provision. The parties did include specific due diligence and closing periods in the Agreement. Further, the parties complied with the specified periods for due diligence and closing on the Belmont Tract.

**{¶38}** However, the Agreement lacks language specifically stating that time was of the essence or that closing on January 27, 2023 was of vital importance for the Harrison and Jefferson Tracts. Most telling, the parties' actions and the circumstances immediately before and after the closing date on the Harrison and Jefferson Tracts negate a finding that time was of the essence.

**{¶39}** AMP sent closing documents and the Affidavits to Long Point on January 25, 2023, two days before the closing date. Andrew Lawson of Long Point emailed Attorney Hillis that same day about the Affidavits and Attorney Hillis responded.

**{¶40}** On January 26, 2023, one day before the closing date, Andrew Lawson emailed Attorney Hillis that Long Point would attempt to secure a signature on the Identity Affidavit and have counsel review the Consent Affidavit. They exchanged additional emails and neither mentioned the January 27, 2023 closing date.

**{¶41}** No further communication occurred between the parties until February 2, 2023. On that date, Long Point member/owner James Lawson emailed Attorney Hillis and asked him to confirm that AMP still needed the executed Affidavits for closing. Attorney Hillis responded, "At this time, we will still need those to proceed to the final closing."

**{¶42}** The fact that these communications occurred after the closing date establish that neither party regarded the January 27, 2023 closing date as vitally important or as barring performance by the other. Long Point asserts that AMP did not require the Identity and Consent Affidavits on the Belmont Tract. However, this does not bar AMP from requesting such documents on the Harrison and Jefferson Tracts under the "reasonable assurances" provision in Article 3.1.

**{¶43}** Article 3.1 states that "Seller shall cooperate with Buyer's commercially reasonable request during the "Due Diligence Period." AMP requested the execution of the Affidavits on January 25, 2024, two days before the closing date and within the due diligence period. AMP also points to Article 9.8 of the Agreement which states that "after the Closing Date," Long Point "shall execute and deliver to" AMP additional documents "reasonably requested by" AMP to perfect title.

**{¶44}** For these reasons, we find that time was not of the essence for either party to close on January 27, 2023.

Case No. 24 HA 0006

**{¶45}** Accordingly, this sub-issue lacks merit.

## PERFORMANCE OR TENDER OF PERFORMANCE

**{¶46}** Long Point additionally asserts that AMP failed to perform or tender performance by the January 27, 2023 closing date and failed to communicate its intent and ability to close since no communications occurred until after that date. Long Point cites *Kirby v. Harrison*, 2 Ohio St. 326 (1953), where the Ohio Supreme Court held:

> [W]here the party who applies for a specific performance has omitted to execute his part of the contract by the time appointed for that purpose, without being able to assign any sufficient justification or excuse for his delay; and where there is nothing in the acts of conduct of the other party that amounts to an acquiescence in that delay, the court will not compel a specific performance.

**{¶47}** Long Point also quotes *Raudabaugh v. Hart*, 61 Ohio St. 73 (1899), where the Court held that a party cannot obtain specific performance without performing or offering to perform under the contract when mutual conditions exist and are to occur at or near the same time. Long Point quotes the holding in that case that "mere willingness and readiness to perform, uncommunicated to the other party, will not avail." *Id.* Long Point submits that neither the Agreement nor Attorney Hillis' January 25, 2023 email indicated that AMP would close without the executed Affidavits. Thus, Long Point concludes that AMP failed to tender its performance because it failed to render payment, or failed to execute a written document waiving or amending the Agreement to delay payment. Long Point further asserts that AMP failed to communicate its willingness to close without the executed Affidavits or to delay closing until the Affidavits were executed.

**{¶48}** Long Point is correct that other than the January 26, 2023 emails, no further communications occurred about the Affidavits until after the January 27, 2023 closing date expired. However, prior to the closing date, AMP had already tendered partial performance by timely closing on the Belmont Tract, which was part of the Agreement. Further, Attorney Hillis had emailed Long Point the closing documents on the Harrison

and Jefferson Tracts on January 25, 2023 and included the Affidavits with an explanation as to the execution of these documents.

**{¶49}** As explained above, Andrew Lawson emailed Attorney Hillis on January 26, 2023, reporting that Long Point would try to obtain a signature on the Identity Affidavit and have its counsel review the Consent Affidavit. This demonstrates Long Point's intention to proceed with execution of the documents and closing.

**{¶50}** Moreover, James Lawson emailed Attorney Hills on February 2, 2023, after the closing date, asking if AMP still needed the additional documents for closing. This demonstrates that Long Point was continuing to move forward with the Agreement after the closing date. Attorney Hillis' affirmative response and the February 8, 2023 email shows that AMP was still ready, willing, and able to tender performance on the Harrison and Jefferson Tracts after the designated closing date. The emails demonstrate that both parties intended to proceed with the Agreement beyond the closing date and that AMP remained ready, willing, and able to tender payment on the Harrison and Jefferson Tracts upon execution of the closing documents by Long Point.

**{¶51}** Accordingly, this sub-issue lacks merit.

## ANTICIPATORY REPUDIATION

**{¶52}** Long Point further asserts that AMP anticipatorily repudiated the Agreement by indicating that it was unwilling to close without the executed Affidavits. It submits that the Affidavits were not required under the plain terms of the Agreement and AMP did not require such documents for closing on the Belmont Tract. Long Point notes that when Andrew Lawson questioned Attorney Hillis about the necessity of such documents for the Harrison and Jefferson Tracts, Attorney Hillis did not dispel its belief that execution of the Affidavits was required before AMP would close on those tracts. Long Point cites the lack of an express statement in Attorney Hillis' January 25, 2023 email that Long Point could return the Affidavits unexecuted or that AMP was willing to close without those documents. Long Point submits that this showed a clear refusal by AMP to proceed to closing unless and until Long Point executed the Affidavits.

**{¶53}** Long Point further asserts that even if the January 25, 2023 email was not evidence of its refusal to close, Attorney Hillis' February 2, 2023 email clearly constituted

anticipatory repudiation. Long Point notes that it made a reasonable request for assurance of performance by AMP when James Lawson emailed Attorney Hillis on February 2, 2023 asking if the Affidavits were still necessary to close. Long Point indicates that Attorney Hillis overtly and unequivocally communicated in his email response that AMP still needed the Affidavits to proceed to closing. Long Point submits that this demonstrated AMP's clear declaration that it was not going to perform under the Agreement.

**{¶54}** Long Point concludes that upon receiving these clear indications of anticipatory repudiation by AMP, it formally accepted the repudiation and terminated the Agreement on February 8, 2023. It cites Article 7.2 of the Agreement which states that a party may terminate the Agreement if the seller or buyer fails to fully comply with the terms of the Agreement in any way and for any reason.

**{¶55}** Finally, Long Point acknowledges that some Ohio courts have held that a mere request for a change in terms of a contract does not constitute a repudiation as the anticipatory breach of contract must be an unequivocal repudiation. Long Point contends that AMP's requests to execute the Affidavits constitutes more than minor changes in the terms of the Agreement. It complains that these Affidavits were not contemplated under the Agreement and Article 9.3 bars any modification of the Agreement without an amendment in writing and signed by the party charged with the modification. It submits that the Identify Affidavit was a very difficult document to obtain as it required a third-party signature, not that of anyone at Long Point or Sarah Sexton herself. Long Point further submits that the Consent Affidavit was unnecessary to the transfer as the Ohio Standards for Title Examination Section 3.5 provides that such authorization is not necessary on behalf of a limited liability company to show authority to execute a deed.

**{¶56}** Long Point submits that the Affidavits were a new and unilaterally imposed requirement to execute documents that were unnecessary and extremely difficult to obtain. It contends that its ability to receive payment by AMP at closing was impeded, which constituted a material change to the Agreement.

**{¶57}** In order to succeed on a claim for anticipatory breach of contract, Long Point must establish the existence of the Agreement, the Agreement contained an obligation for AMP to perform some duty in the future, AMP refused to tender the future performance

Case No. 24 HA 0006

by "word or deed," and Long Point suffered resulting damage. *Sunesis Trucking Co., Inc. v. Thistledown Racetrack, L.L.C.,* 2014-Ohio-3333, ¶ 30 (8th Dist.), citing *Metz v. Am. Elec. Power Co., Inc.*, 2007-Ohio-3520, ¶ 35 (10th Dist.).

**{¶58}** The "anticipatory breach of contract must be an unequivocal repudiation of the contract." *Sunesis, supra*, at ¶ 31, citing *McDonald v. Bedford Datsun*, 59 Ohio App.3d 38 (8th Dist. 1999), paragraph one of the syllabus. A "mere" request to change the terms of a contract or to cancel a contract does not establish repudiation. *Id.* In addition, "a mere expression of doubt as to willingness or ability to perform is insufficient to constitute repudiation of a contract." *Sunesis, supra*, at ¶ 31, quoting *Farmers Comm. Co. v. Burks*, 130 Ohio App.3d 158, 172 (3d Dist.1998).

**{¶59}** A party may request reasonable assurance of the other's performance if the former has reasonable grounds to believe that the latter party will not perform as required under the contract. *Sunesis, supra*, at ¶ 32, citing *Burke v. Athens*, 123 Ohio App.3d 98 (9th Dist.1998). If the latter party fails to provide such assurance, this is considered a repudiation of the contract. *Id.*

**{¶60}** Here, both parties acknowledge the existence of the Agreement. Further, AMP had a duty to perform in the future by rendering payment for the Harrison and Jefferson Tracts. The next question is whether AMP refused to perform "by word or deed." The parties rely on the language of the Agreement, and the January 25, 2023, January 26, 2023, and the February 2, 2023 emails to support their assertions.

**{¶61}** The January 25, 2023 email does not demonstrate a refusal by AMP to perform. Attorney Hillis sent the January 25, 2023 email to Andrew and James Lawson requesting that they review the closing documents he attached and he included the Affidavits. He explained that the Identity Affidavit was provided to clear up the chain of title for the Jefferson Tract because he could not locate secondary sources to confirm that Sarah Wiggers was Sarah Sexton. He further explained that the Consent Affidavit was for the members of the limited liability company.

**{¶62}** Andrew Lawson responded and asked Attorney Hillis to identify the signator for the Identity Affidavit and requested an explanation of the Consent Affidavit. Attorney Hillis answered those questions within minutes of Andrew Lawson's email.

**{¶63}** The January 26, 2023 emails do not demonstrate AMP's refusal to perform. Andrew Lawson emailed Attorney Hillis and informed him that Long Point would try to send the Identity Affidavit to Sarah Sexton so that she could find someone to sign it. He further informed that the Consent Affidavit would be sent to Long Point's counsel for review. Attorney Hillis responded that Andrew Lawson's email "[s]ounded good" and he indicated that the Consent Affidavit was a standard form and to let him know if Long Point's counsel had any questions.

**{¶64}** Andrew Lawson's subsequent email on January 26, 2023 inquired further into the Affidavits and Attorney Hillis responded via email, explaining that AMP does not obtain the signatures on the Affidavits because generally people in the chain of title get upset because they think that they did not make enough money. He indicated that AMP usually has the seller contact the prior owner and explain that the Identity Affidavit is for curative purposes "deemed necessary when the file was being put away."

**{¶65}** There is no demonstration of repudiation from the January 26, 2023 emails.

**{¶66}** The very next communication between the parties occurred on February 2, 2023, after the January 27, 2023 closing date. On that date, James Lawson emailed Attorney Hillis and stated that Long Point was "still working on getting the additional documents. Just giving you an update and confirming that you still need before closing." Attorney Hillis responded, "Thank you for the update on the additional documents. At this time, we will still need those to proceed to final closing."

**{¶67}** Attorney Hillis' email is not an unequivocal refusal by AMP to refuse to tender payment if the Affidavits were not executed. Lawson's email to Hillis informed Hillis that Long Point was continuing to proceed with execution of the Affidavits. Lawson did not indicate problems or issues with the Affidavits and did not indicate an unwillingness or refusal to execute them. Nor did Lawson inquire if AMP would refuse to tender payment if the Affidavits were unexecuted. Attorney Hillis does not unequivocally refuse to proceed with closing if the Affidavits were unexecuted. Rather, he states that the Affidavits are necessary for "final closing."

**{¶68}** For these reasons, we find that AMP did not repudiate or anticipatorily repudiate the Agreement by communicating a refusal to perform at closing. AMP requested that Long Point execute the Affidavits and indicated that they were necessary

for final closing, but never clearly and unequivocally indicated that AMP would not perform if those documents were not executed. Long Point could have requested reassurance from AMP or asked AMP to proceed to close without the Affidavits, but it did not do so.

**{¶69}** Accordingly, this issue lacks merit.

## MINOR REQUEST FOR CHANGE IN TERMS

**{¶70}** Long Point further contends that AMP unilaterally imposed more than minor changes to the Agreement, which impeded its ability to obtain payment by AMP. Long Point asserts that this constituted a material change to the Agreement and it was therefore permitted to accept AMP's repudiation of the Agreement and terminate it. Long Point notes that the Identity Affidavit required it to find a third party familiar with Sarah Sexton to execute it, which made this task extremely difficult for Long Point to execute. It also submits that Ohio Standards for Title Examination did not require it to execute a deed on behalf of a limited liability company and therefore the Consent Affidavit was unnecessary. Long Point also cites Article 9.3 of the Agreement which precluded modification of the Agreement without a written amendment and signature by the party charged with the modification. It submits that this Article was included to expressly prevent situations such as the instant one where one party alleges that the other party's unsigned statements constituted an implied waiver or modification of the terms of the Agreement.

**{¶71}** We find that AMP's request for execution of the Affidavits was not improper and did not constitute a repudiation because it did not materially alter the terms of the Agreement. Again, AMP requested that Long Point execute the Affidavits. None of Attorney Hillis' emails signify or imply any unwillingness to tender payment if the Affidavits were not executed. Attorney Hillis indicated that execution of the Affidavits was necessary to proceed to "final closing", but he did not unequivocally and clearly state that closing could not occur without those documents. The Agreement allowed AMP to request reasonable assurances prior to closing and additional documents after closing. Moreover, Long Point never requested reasonable assurances of payment without the Affidavits by Long Point. In fact, Long Point indicated that it was continuing its attempts to execute the Affidavits.

**{¶72}** Accordingly, this issue lacks merit.

Case No. 24 HA 0006

**ISSUE FOR REVIEW NO. 3:**

**A COURT CANNOT ALTER THE PLAIN TERMS OF AN AGREEMENT WHEN ISSUING AN ORDER OF SPECIFIC PERFORMANCE.**

{¶73} In its third sub-issue, Long Point asserts that the trial court erred by ordering it to deliver the closing documents before AMP tendered payment. Long Point contends that the Agreement requires simultaneous closing with payment upon delivery of the closing documents. Long Point submits that the trial court unjustifiably modified the terms of the Agreement. It cites cases stating that courts will not rewrite contractual provisions when the contract has express provisions governing the dispute. *Stanley Miller Const. Co. v. Ohio School Facilities Comm.*, 2010-Ohio-6397, ¶ 12 (10th Dist.), quoting *Dugan & Meyers Constr. Co., Inc. v. Ohio Dept. of Adm. Servs.*, 2007-Ohio-1687, ¶ 39.

{¶74} AMP responds that the trial court did not abuse its discretion when it ordered specific performance that did not mirror the terms of the Agreement. It submits that the trial court ordered Long Point to perform first because Long Point breached the Agreement and it was in accord with the way that the parties closed on the Belmont Tract. AMP cites caselaw holding that a court is not required to adhere robotically to every contract term in ordering the equitable remedy of specific performance. *125th & St. Clair Street Co., L.L.C. v. Adams,* 2021-Ohio-4013, ¶ 31 (8th Dist.).

{¶75} We review the court's decision to grant specific performance for an abuse of discretion. An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶76} Contrary to Appellant's assertion, the trial court followed the provisions of the Agreement. Article 8.1 of the Agreement states in relevant part that at Closing:

> the following events shall occur, each being a condition precedent to the others and being deemed to have occurred simultaneously with the others.

> (a) <u>Mineral Deed</u>. The Seller shall execute, acknowledge and deliver to Buyer an Oil, Gas Hydrocarbon and other Minerals Deed . . .;

Case No. 24 HA 0006

(b) <u>Express Warranty</u>.   The Seller has agreed and it is the express understanding of the Parties that in the event any wells covering the Subject Property are producing oil, gas or other minerals prior to and or during the Agreement, that all royalties for oil, gas or other minerals will be property of the Buyer.   In addition, all royalties for the oil, gas or other minerals on or after the Closing Date will be the property of the Buyer.   Seller shall execute any documents required to effectuate the intention of this clause . . .;

(c) <u>Bill of Sale</u>.   The Seller shall execute a Bill of Sale;

(d) <u>Closing Amount</u>.   Buyer shall deliver to Seller the Closing Amount with a Cashier's Check or business check; and

(e) <u>W9</u>.   Seller shall and complete and deliver to Buyer an accurate IRS form W9.

**{¶77}** The court here ordered Long Point to execute and deliver to AMP the documents in sections (a), (c), and (e) above within 10 days of the court's order.   The court ordered AMP to deliver to Long Point within 10 days thereafter payment of the purchase price for the Harrison and Jefferson Tracts.

**{¶78}** The trial court did not abuse its discretion.   The use of the phrases "conditions precedent" and "being deemed to have occurred simultaneously" in Article 8.1 negate a finding that all of the listed actions had to occur at precisely the same time in order to constitute a closing.   The trial court followed the Agreement and this Article by ordering that closing would be deemed to have occurred when all of the actions outlined in Article 8.1 occurred.   Moreover, the court ordered the closing in the same manner as the Belmont Tract.   It is not an abuse of discretion to use the parties' prior course of dealing.

**{¶79}** Accordingly, Long Point's sole assignment of error lacks merit and we affirm the trial court's judgment.   The court properly ordered specific performance because the Agreement's language and the parties' actions did not make time of the essence for closing, AMP reasonably requested the Affidavits, AMP did not indicate it was not ready,

<u>Case No. 24 HA 0006</u>

unwilling, or unable to tender performance without the Affidavits, and it did not unilaterally alter the terms of the Agreement.

Robb, P.J., concurs.

Dickey, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Harrison County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**